617 So.2d 1308 (1993)
Bruce ALLEN and Patricia Allen, Plaintiffs-Appellants,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.
No. 92-982.
Court of Appeal of Louisiana, Third Circuit.
May 5, 1993.
*1309 Marshall J. Stockstill, for plaintiffs-appellants Bruce and Patricia Allen.
Eric S. Neuman, David Michael Kaufman, for defendant-appellee State Farm Mut. Auto. Ins. Co.
Before DOMENGEAUX, C.J., and GUIDRY and WOODARD, JJ.
GUIDRY, Judge.
Plaintiffs, Patricia and Bruce Allen, appeal a judgment of the trial court finding that they validly selected lower uninsured/underinsured motorist coverage than liability limits on their State Farm policy of automobile insurance covering their 1990 Isuzu automobile. We affirm.

FACTS
On July 13, 1990, Patricia Allen suffered personal injuries when her 1990 Isuzu Impulse automobile was struck by a 1978 Datsun 280Z operated by William L. Smith. Mrs. Allen was traveling south on Canal Street in New Orleans when Smith, who was traveling easterly on South Broad Street, disregarded a red signal light and struck Mrs. Allen. State Farm Mutual Automobile Insurance Company (State Farm) was insurer of both vehicles. There was no question as to Smith's liability and State Farm as his liability insurer tendered to plaintiffs the limits of Smith's liability coverage, i.e., $10,000. State Farm, in its capacity as the uninsured/underinsured motorist (UM) insurer of the Allens, tendered another $10,000 to plaintiffs, claiming that, in accordance with a selection of lower limits form executed April 18, 1989 by Mrs. Allen, this was the plaintiffs' limit of UM coverage. The Allens accepted the UM coverage tender but reserved their rights to proceed against State Farm for an additional $40,000 which they maintained was due under their policy.
On July 15, 1991, plaintiffs filed this suit alleging that their State Farm policy provided UM coverage in the amount of $50,000 each person and $100,000 each accident, the same limits as their bodily injury liability coverage. They alleged that the lower limits selection form executed in April 1989 was not effective as to their policy in effect at the time of the accident. State Farm denied plaintiffs' allegations and after discovery was had, filed a motion for summary judgment which was granted. This appeal followed.
The record reveals that prior to the year 1985, Bruce Allen handled all the family finances, insurance, etc. In that year, Allen turned over the duties to Mrs. Allen, who was not employed and therefore able to devote more time to family matters. At that time, the Allens' family automobile was a 1980, four door, Oldsmobile Delta "88". Allen also had the use of a company vehicle.
Early in 1989, Mrs. Allen mentioned to her husband that she thought their car insurance premiums were inordinately high for a nine year old car and that she was going to see what she could do to lower this cost. Mrs. Allen contacted the office of Tommy Desormeaux, the Allens' State Farm agent, and spoke with a person whose identity she was unable to recall about reducing their insurance cost. After reviewing the Allens' coverage, the agent suggested that perhaps the Allens were over insured and advised Mrs. Allen that by reducing their coverage, they would likewise reduce their premiums.
On April 18, 1989, Patricia Allen executed two documents: (1) a State Farm form entitled "Louisiana Uninsured Motor Vehicle Coverage (Acknowledgment of Coverage Selection or Rejection)"; and, (2) a policy endorsement changing both the Allens' liability coverage and UM coverage. The former document shows Mrs. Allen selected UM limits of $10,000 each person and $20,000 each accident (10/20) and the *1310 latter document indicates a change in bodily injury liability coverage from $100,000 each person, $300,000 each accident (100/300) to $50,000 each person, $100,000 each accident (50/100) as well as a reduction in UM coverage from 100/300 to 10/20.
Appellants make a tenuous argument that the numbers 10/20 which appear on each form reflect coverage of $10 and $20, respectively, not $10,000 and $20,000. We find no merit to this claim as the use of the numbers 10, 20, 50, 100, etc., to represent thousands of dollars of coverage is customary throughout the insurance industry and, additionally, the amount of coverage is fully explained on the declarations page of the State Farm policy.
There are three major issues presented by this appeal: (1) the validity of State Farm's acknowledgment of coverage selection or rejection form; (2) the status of the Allens' State Farm policy number 1108 873-B18-18L covering their 1990 Isuzu, i.e., was it a renewal policy or a new policy requiring a new UM selection or rejection form; and, (3) whether the selection of lower UM limits presents a genuine issue of material fact as to whether the Allens were offered a choice of UM limits.

THE STATE FARM UM COVERAGE SELECTION OR REJECTION FORM'S VALIDITY AND THE EXISTENCE OF ANY MATERIAL FACT AS TO CHOICE
We address issues one and three together since they are closely intertwined. Mrs. Allen testified, in her deposition given October 8, 1991, that she contacted her insurance agent's office because she felt her automobile insurance premiums were too high and was seeking a way to lower them. She admitted signing both the coverage selection/rejection form and the endorsement which changed (lowered) both the Allens' bodily injury liability and UM coverages. Mrs. Allen stated that she really didn't know what coverage they carried or what she was "giving up" in reducing her premiums. Rather, she stated that she simply told the agent she wanted to reduce her payments and he told her this was a way to do so. Mrs. Allen testified that the forms came to her in the mail, already filled out, and she signed them without reading them. However, when pressed by counsel for defendant, she admitted that she was not sure if the previous statement was correct and that she could not dispute statements from Tommy Desormeaux's staff that she came into the office and executed the documents. Finally, she stated that she simply couldn't remember. Two members of Desormeaux's staff executed affidavits attesting to the fact that Mrs. Allen came into the office on April 18, 1989, and executed both the form selecting lower UM limits and the endorsement changing the Allens' UM and bodily injury liability insurance coverage. All of this is in stark contrast to an affidavit executed by Mrs. Allen in April of 1992 wherein she avers that she was not given "any options available regarding uninsured motorist coverage" by State Farm, any of its agents or employees. Considering the affidavits of the two employees of Desormeaux's office; Mrs. Allen's testimony at her deposition that she just couldn't remember what she did; and, Mrs. Allen's admission that she signed both the coverage selection/rejection form and the endorsement which lowered both the bodily injury liability and the UM coverages, we conclude that her affidavit of April 1992 fails to raise a genuine issue of material fact which would preclude summary judgment.
Recently, in Tugwell v. State Farm Insurance Co., 609 So.2d 195 (La.1992), our Supreme Court reiterated what constitutes a valid rejection or selection of lower UM limits of coverage stating:
... This court has held a valid rejection or selection of lower limits must be in writing and signed by the named insured or his legal representative. Henson v. Safeco Insurance Companies, 585 So.2d 534, 538 (La.1991); Giroir v. Theriot, 513 So.2d 1166, 1168 (La.1987); A.I.U. Insurance Co. v. Roberts, 404 So.2d 948, 951-52 (La.1981). Further, the insurer must place the insured in a position to make an informed rejection of UM coverage. Henson, 585 So.2d at 539. *1311 In other words, the form used by the insurance company must give the applicant the opportunity to make a "meaningful selection" from his options provided by the statute: (1) UM coverage equal to bodily injury limits in the policy, (2) UM coverage lower than bodily injury limits in the policy, or (3) no UM coverage.
The court went on to explain:
... A rejection on a form that prohibits the insured from choosing limits below liability coverage or which automatically chooses a certain lower amount for the insured, does not meet the statutory requirements because it forecloses options available to the insured by law. In this case, the Umbrella Liability Policy application form only provided a space for the insured to reject coverage completely. There was no space provided in which he could choose limits lower than the liability coverage. Therefore, it fails to meet the requirements of the statute.
. . . . .
Implicit in the statute's requirement that the insurer make available to the insured the option of selecting lower limits is the idea that the insured be made aware of that option....
An insured cannot exercise an option he does not know exists. This can be accomplished in several ways. For example, the insurer can require the insured to acknowledge in writing he has been informed of the options; or, the application itself can be set up in such a way through the use of blanks and boxes that it is apparent to the reasonable person that he has the option of selecting any lower limit he chooses. (footnotes omitted)
Tugwell, supra, at 198-199.
The form used by State Farm for the rejection or selection of lower limits of UM coverage uses both boxes and blanks. The form acknowledges the right of the insured to UM coverage in amounts not less than the limits of bodily injury liability insurance and the boxes allow an insured to either reject UM coverage completely or to exercise his/her right to select limits lower than those selected for bodily injury liability. If the insured selects the box which indicates he/she desires lower limits of UM coverage, he/she then must fill in two blanks at the end of the sentence indicating what amount of UM coverage he/she desires. See Appendix I.
We find that the State Farm form meets the criteria set forth in Tugwell and that Mrs. Allen validly selected the lower 10/20 limits on April 19, 1989. See also McCall v. Nguyen, 509 So.2d 651 (La.App. 3rd Cir. 1987); and Henson v. Safeco Insurance Companies, 585 So.2d 534, 539 (La.1991), citing McCall approvingly.

THE NEW OR RENEWAL POLICY ISSUE
At the time the lower UM coverage was selected by Mrs. Allen, plaintiffs were insuring a 1980 Oldsmobile Delta 88 under State Farm policy number 110 8873-B18-18J. In May 1990, the Allens purchased the 1990 Isuzu which Mrs. Allen was driving at the time of the accident. At that time, several changes were made in the Allens' policy: (1) the Oldsmobile was replaced on the policy by the Isuzu; (2) comprehensive coverage was added; and, (3) collision coverage was added. The Allens did not change the limits of their bodily injury liability coverage nor did they execute a new UM selection/rejection form.
The statutory provisions concerning the rejection of or selection of lower limits of UM coverage are contained in La.R.S. 22:1406(D)(1)(a)(i and ii), which provide in pertinent part:
(i) ... the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits.... such coverage need not be provided in or supplemental to a renewal, reinstatement, or a substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates...
(ii) After September 1, 1987, such rejection or selection of lower limits shall be *1312 made only on a form designed by each insurer. The form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto.
Thus, the initial rejection or selection of lower limits of UM coverage by an insured is valid for renewal, reinstatement and/or substitute policies.
Appellants argue that when they purchased their 1990 Isuzu, they purchased a new policy of insurance and thus, absent a new rejection or selection of lower limits of UM coverage, the UM limits would now equal the limits of bodily injury liability coverage. We agree with appellants that the purchase of a new policy would necessitate the execution of a new lower selection/rejection form. However, we find that the substitution of the Isuzu for the Oldsmobile and the addition of comprehensive and collision coverage on the new vehicle did not convert the existing policy to a new policy, but, rather, constituted a substitute policy within the intendment of La. R.S. 22:1406(D)(1)(a)(i). See Mouton v. Guillory, 494 So.2d 1374 (La.App. 3rd Cir. 1986).
Plaintiffs admit that the policy in force on the day of the accident had effective dates of July 3, 1990 through February 18, 1991. Thus, this was a renewal of the previous policy which was in effect when the Isuzu was purchased in May 1990. Allen, in his deposition, stated that before he signed the papers on the Isuzu, he called Lisa at his insurance agent's office to check to make sure the car was not classified as a "sports" car with substantially higher premiums. When he was assured that this was not the case, Allen informed Lisa he was taking the car home.
He further testified, at deposition, that he did not trade the Oldsmobile directly to the Isuzu dealer, but that "the salesman took care of getting rid of the car for me". Allen made no claim that the Isuzu was added to the policy covering the Oldsmobile but admitted that the Isuzu was substituted for the Oldsmobile. The facts of this case are distinguishable from those present in Donaghey v. Cumis Insurance Society, 600 So.2d 829 (La.App. 3rd Cir.1992), where an additional car was added to a policy. In Donaghey, supra, this court held that the addition of another car to an already existing policy increased the policy's coverage thereby requiring a separate rejection of UM coverage.[1]
The Allens next argue that the addition of comprehensive and collision coverages constituted the purchase of a new policy. We disagree. In the present case, one vehicle was substituted for another with no change being made in the bodily injury liability coverage. The addition of comprehensive and collision coverages in no way changed or increased State Farm's exposure for bodily injury liability damages. It is the latter coverage which is tied by statute to UM coverage, not comprehensive or collision. Cf. Gaar v. Sowards, 573 So.2d 499 (La.App. 1st Cir.1990), writ denied, 569 So.2d 990 (La.1990).
In sum, there are no issues of material fact. Plaintiffs were unhappy with how much they were paying for auto insurance. In order to reduce their premiums, they knowingly reduced both their bodily injury liability and UM coverages. Subsequently, they purchased a new car which was substituted on their existing policy for the old car without changing either the bodily injury liability or UM limits and a renewal of that policy was in effect at the time of the accident. Summary judgment was properly granted.
For the reasons stated, the judgment of the trial court is affirmed. Appellants, Patricia and Bruce Allen, are cast with all costs of this appeal.
AFFIRMED.
DOMENGEAUX, J., concurs.
*1313 
NOTES
[1] Although the author of this opinion disagrees with the holding in Donaghey, that case is nevertheless distinguishable.