619 So.2d 186 (1993)
Russel HUGUET and Lola Huguet, Plaintiffs-Appellants,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., Defendant-Appellee.
No. 92-895.
Court of Appeal of Louisiana, Third Circuit.
June 2, 1993.
*187 J. Wendel Fuselier, for plaintiffs-appellants Russell Huguet and Lola Huguet.
Jerry Joseph Falgoust, for defendant-appellee State Farm Ins. Co.
Before DOMENGEAUX, C.J., and YELVERTON and SAUNDERS, JJ.
DOMENGEAUX, Chief Judge.
Plaintiffs, Russel and Lola Huguet, appeal a trial court judgment finding that they validly selected UM limits in a lower amount than the liability limits of their automobile policy with State Farm. We affirm.
On August 5, 1991, Russel Huguet was driving his 1991 Ford Explorer, with his wife Lola and their grandchildren as passengers, when the Explorer was struck by an uninsured/underinsured vehicle. On October 22, 1991, Russel and Lola filed the instant suit to recover damages under the UM portion of their policy with State Farm. State Farm filed a motion for summary judgment, seeking a determination that the Huguets' policy had UM limits of only $10, 000/$20,000. The trial court agreed with State Farm and rendered the judgment from which the plaintiffs appeal.
In support of its motion, State Farm introduced the Huguets' policy, the affidavit of Warren Lasyone, an underwriting supervisor, and the deposition of Russel Huguet.
The declarations page of the policy lists the named insured as "HUGUET, LOLA & RUSSELL." The page also shows liability limits of $100,000/$300,000 and UM limits of $10,000/$20,000. At the top of the page is the policy number "446 0884-18C;" on the bottom of the page is the notation, "REPLACED POLICY XXXXXXX-XXB."
In his affidavit, Warren Lasyone stated that the Huguet policy initially provided coverage for a 1985 Chevrolet, with effective dates of December 28, 1989 through June 28, 1990. He further stated that on June 1, 1990, Russel Huguet signed a selection of lower UM limits and that on June 18, 1990, Russel Huguet deleted coverage for the 1985 Chevrolet and replaced it with *188 coverage for a 1991 Ford Explorer. Mr. Lasyone explained that the policy number reflected a "C" instead of "B" when the Explorer replaced the Chevrolet so that State Farm would be informed of the change in the vehicle under the same policy. The policy was renewed from June 28, 1990 through December 28, 1990; from December 28, 1990 through June 28, 1991; and from June 28, 1991 through December 28, 1991, with the accident occurring in the last renewal period.
In his deposition, Mr. Huguet admitted that he signed the form selecting lower UM limits. He stated that he traded in the Chevrolet when he bought the Explorer and that he did not make any changes in his policy other than the selection of lower UM limits.
The plaintiffs argue that the selection of lower UM limits is invalid because the form was not signed by both Russel and Lola. In opposition to State Farm's motion, the Huguets introduced their own affidavits in which they each stated that Lola did not authorize or appoint Russel as her legal representative.
We find no merit to this argument. La. R.S. 22:1406 D(1)(a)(i), which mandates UM coverage in an amount not less than liability coverage, also provides:
[H]owever, the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits.... (Emphasis added.)
In Oncale v. Aetna Casualty and Surety Co., 417 So.2d 471 (La.App. 1st Cir. 1982), the court held that the rejection of UM coverage by the wife only was valid; therefore, the husband was precluded from recovery under the UM provision of the policy after he was injured by an uninsured driver. The policy in Oncale was issued in the husband's name only, but the court found the wife was a "named insured" as defined in the policy and was therefore "any insured named in the policy" under the statute. In the instant case, there is no question that Russel and Lola Huguet are both listed as named insureds in the State Farm policy. The fact that their names appear on the policy as "HUGUET, LOLA & RUSSELL" is unimportant. The policy clearly lists two persons as named insureds, and under La.R.S. 22:1406 D(1)(a)(i), either named insured has the authority to select lower UM limits. This authority comes from the statute, see Oncale, supra at p. 475; hence, the affidavits of the Huguets are irrelevant.
Russel executed the selection of lower limits form on June 1, 1990. Subsequently, on June 18, 1990, he replaced coverage for his Chevrolet with coverage for the Explorer, with this action resulting in a new policy number. La.R.S. 22:1406 D(1)(a)(i) also provides that the mandated UM coverage need not be provided in "a renewal, reinstatement, or substitute policy" where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer.
In Donaghey v. Cumis Insurance Society, 600 So.2d 829 (La.App. 3d Cir.1992), this court held that the addition of a new car to an automobile policy amounted to an increase in the policy's coverage, even though bodily injury limits were not increased. However, in Allen v. State Farm Mutual Automobile Ins. Co., 617 So.2d 1308 (La.App. 3d Cir.1993), we recently recognized that the substitution of one vehicle for another does not convert an existing policy into a new policy. In Allen, the plaintiff testified that "the salesman took care of getting rid of the car for me." In that case we held that a second selection of lower UM limits was unnecessary where the new vehicle was not added as a second vehicle to the policy. In the instant case, Mr. Huguet testified that he traded in the Chevrolet when he bought the Explorer. The record clearly supports a finding that the Explorer was substituted for the Chevrolet, rather than added as a second vehicle. Under the statute, the mandated UM coverage does not apply to a substitute policy; hence, the Huguets were not required to execute a second selection of lower UM limits when they purchased and insured the Explorer. The form selecting *189 lower UM limits that was signed by Russel on June 1, 1990 remained in effect when the Huguets insured their Explorer and through the subsequent renewals of the substituted policy.
In Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992), our Supreme Court recently reiterated the requirements for a valid rejection or selection of lower UM limits:
This court has held a valid rejection or selection of lower limits must be in writing and signed by the named insured or his legal representative. Henson v. Safeco Insurance Companies, 585 So.2d 534, 538 (La.1991); Giroir v. Theriot, 513 So.2d 1166, 1168 (La.1987); A.I.U. Insurance Co. v. Roberts, 404 So.2d 948, 951-52 (La.1981). Further, the insurer must place the insured in a position to make an informed rejection of UM coverage. Henson, 585 So.2d at 539. In other words, the form used by the insurance company must give the applicant the opportunity to make a "meaningful selection" from his options provided by the statute: (1) UM coverage equal to bodily injury limits in the policy, (2) UM coverage lower than bodily injury limits in the policy, or (3) no UM coverage.
609 So.2d at 197.
Reviewing the form executed by Mr. Huguet on June 1, 1990, we find that it meets all the requirements of Tugwell. The printed form informs the insured of his right to UM coverage in amounts not less than the limits of bodily injury liability coverage, as well as the insured's right to uninsured motor vehicle property damage. The form then provides three options for the insured: he may select lower limits of UM coverage, with blanks provided for the insertion of the lower amounts; he may select UM coverage for bodily injury only and therefore reject UM property damage coverage; or he may reject UM coverage completely. On the form in question, the insured selected the first option with the limits of $10,000/$20,000 written in the blanks. The form is similar to the one cited with approval in Allen, supra.
We are aware of the strong public policy behind the statutory requirement of UM insurance and that insurance policies are to be liberally construed in favor of UM coverage. Henson v. Safeco Insurance Companies, 585 So.2d 534 (La.1991). However, in the instant case we are presented with evidence that a named insured admitted selecting lower UM limits on a form that complied with the Supreme Court's most recent requirements. Additionally, the subsequent substitution of one vehicle for another created only a substitute policy rather than a new policy. Under these circumstances, we can find no error in the trial court's finding that State Farm is entitled to judgment as a matter of law that the Huguets' policy affords UM limits of $10,000/$20,000.
For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to appellants, Russel and Lola Huguet.
AFFIRMED.
SAUNDERS, J., dissents and assigns reasons.
SAUNDERS, Judge, dissenting,
I respectfully dissent as to the conclusion of the majority that the husband had the authority to reject UM coverage (or select lower limits) on behalf of his wife, a named insured on the policy. Specifically, I believe there exists a material issue of fact as to the authority of Mr. Huguet that precludes the granting of the motion for summary judgment in this case. I disagree with the conclusion of the majority with regard to this issue.
For the foregoing reasons, I respectfully dissent.