RHONDA MESSERLY, Plaintiff-Appellee, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.

Fourth District    No. 4—95—0351

Argued October 24, 1995.—Opinion filed February 23, 1996.

Kevin J. Babb (argued), of Reed, Armstrong, Gorman, Coffey, Gilbert & Mudge, of Edwardsville, for appellant.

Samuel A. Mormino, Jr. (argued), of Wiseman, Shaikewitz, McGivern, Wahl, Flavin, Hesi & Mormino, P.C., of Alton, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

The trial court held former section 143a—2(1) of the Illinois Insurance Code (Code) (Ill. Rev. Stat. 1989, ch. 73, par. 755a—2(1)) required an offer of additional uninsured motorist (UM) coverage be made to all named insureds under a policy. We reverse and hold a legally sufficient offer made to one named insured satisfied the offer requirement of section 143a—2(1).

In January 1990, Richard Messerly contacted State Farm Insur-

ance (State Farm) agent Jerry Marcacci to procure automobile insurance for himself and his wife, Rhonda, the plaintiff in this action. Richard met with Marcacci at his office to discuss the coverage he wanted and to fill out an application for insurance. The evidence established Marcacci's custom was to spend approximately 30 to 45 minutes discussing the various types and terms of coverage available to applicants, including UM coverage, and he followed this procedure with Richard. According to the evidence, the cost of insurance was a concern of Richard's and at the meeting Richard told Marcacci he wanted the lowest amounts of coverage possible. Therefore, Richard's application reflected a request for UM coverage equal to the statutory minimum required by the Code.

Due to several factors, Marcacci was not able to obtain insurance for the Messerlys with State Farm but arranged for a policy to be issued by the Chubb Group until such time as they qualified for coverage with State Farm. In approximately June 1990, Marcacci contacted the Messerlys by mail to inform them they were qualified to receive coverage under State Farm. On June 2, 1990, Richard went to Marcacci's office once again and filled out a new application for insurance, requesting higher bodily injury liability limits but not increasing the levels of UM coverage.

In fact, when Richard applied for coverage in June 1990, he signed two declination forms (one for each car belonging to the family) which stated he had been offered and chose to reject the option of purchasing additional UM coverage and instead selected limits of $20,000/$40,000. As a result of the June 1990 application, the Messerlys obtained insurance coverage with State Farm which they maintained up to and beyond October 1992. In October 1992, plaintiff was involved in an accident with an uninsured motorist and incurred in excess of $50,000 in medical bills.

Plaintiff filed suit seeking a declaratory judgment, asking the court to find defendant did not comply with section 143a—2 of the Code since it failed to adequately communicate an offer of additional UM coverage to plaintiff, Rhonda, and such failure caused plaintiff to be without sufficient motor vehicle coverage. Plaintiff asked the court to order a reformation of the insurance contract to reflect levels of UM coverage equal to those of her bodily injury liability limits.

The trial court found Marcacci had made a legally sufficient offer of UM coverage to Richard Messerly. However, the court held defendant was required under the statute to make an offer of UM coverage to every named insured under the policy. The court granted plaintiff's prayer for relief, reforming the insurance contract to provide UM coverage of $50,000, an amount equal to the level of bodily injury liability coverage limits of the policy.

At issue is whether section 143a—2 of the Code required an offer of additional UM coverage be made to every named insured under a policy, or whether a legally sufficient offer made to one named insured satisfied the offer requirement.

Many States, including Illinois, have enacted legislation which makes UM coverage mandatory. (1 A. Widiss, Uninsured and Underinsured Motorist Coverage § 2.5, at 29 (2d ed. 1992).) In Illinois, UM insurance must be included in all motor vehicle liability policies issued or delivered. (See Ill. Rev. Stat. 1989, ch. 73, par. 755a—2 (now 215 ILCS 5/143a—2 (West 1994)).) In addition, most UM statutes provide for optional purchases by insureds of UM coverage limits in excess of the basic limits prescribed by statute. 2 I. Schermer, Automobile Liability Insurance § 36.05, at 36—40 (3d ed. 1995).

As of January 1990, Illinois law imposed an affirmative duty upon insurers to offer additional UM coverage when renewing, issuing or delivering automobile liability policies. The applicable statutory language stated: "[n]o policy *** shall be renewed or delivered or issued for delivery *** unless [UM] coverage *** is offered in an amount up to the insured's bodily injury liability limits." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 73, par. 755a—2(1).) The statute also required insurers to offer underinsured motorist (UDIM) coverage: "[A]ny offer made under subsection (1) of this Section shall also include an offer of [UDIM] coverage." (Ill. Rev. Stat. 1989, ch. 73, par. 755a—2(3).) Purchasers of auto liability insurance were permitted to reject offers of additional coverage, but such rejections had to be knowing and intelligent, based upon a comprehensible explanation by the insurer of the terms and nature of the coverage. *Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 465 N.E.2d 956.

The Supreme Court of Illinois developed guidelines with respect to these offers in *Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, 425-26, 488 N.E.2d 548, 550, where it set forth the components of a legally sufficient offer of UDIM and, by implication, UM coverage. *Cloninger* echoed *Tucker*, emphasizing the importance of conveying an explanation of UM/UDIM coverage sufficient to allow the insured to make an informed decision regarding additional coverage. *Cloninger*, 109 Ill. 2d at 425, 488 N.E.2d at 550.

At the time in question, defendant admits insurers were obliged to offer policyholders additional UM coverage and meet the *Cloninger* test with respect to the sufficiency of such offers. However, as defendant correctly points out, *Cloninger* does not specifically answer the question of *to whom* the offer of additional coverage had to be made. This narrow issue does not appear to have been addressed by either the Illinois Appellate or Supreme Court.

Treatises on the topic of UM and UDIM coverage indicate courts throughout the country have taken several different approaches to resolving this issue. It has been proposed, where a statute is silent, the issue should logically be resolved by ascertaining who may *reject* offers of UM/UDIM coverage. (2 I. Schermer, Automobile Liability Insurance §§ 36.04, 36.04[1], at 36—6 through 36—7 (3d ed. 1995).) Under this approach, the court would examine the language of the statutory section which identifies the parties entitled to reject offers of UM/UDIM coverage.

There are various terms used in statutes throughout the country to identify the person(s) permitted to reject UM/UDIM coverage, including "the named insured," "any named insured," and "the insured." (2 I. Schermer, Automobile Liability Insurance § 36.04[1], at 36—7 (3d ed. 1995).) When more than one individual is listed as a named insured in the declarations, Schermer suggests because the goal of these statutes is to ensure UM/UDIM coverage for the protection of persons insured under a policy, the consistent and appropriate interpretation is a rejection by one named insured, *unless he is authorized to act for others,* applies only to himself and not the others. (2 I. Schermer, Automobile Liability Insurance § 36.04[1], at 36—8 (3d ed. 1995).) Schermer's treatise cites *Plaster v. State Farm Mutual Automobile Insurance Co.* (Okla. 1989), 791 P.2d 813, 814-15, in which the Supreme Court of Oklahoma held, where the statute required written rejection of coverage by "the named insured," a rejection of UM coverage by one insured was inoperative as to others, and a named insured who had not executed a written rejection could not be bound by the rejection of another.

However, several other courts cited in the above treatise reach contrary conclusions. For example, in *Huguet v. State Farm Mutual Automobile Insurance Co.* (La. App. 1993), 619 So. 2d 186, *appeal denied* (La. 1993), 625 So. 2d 1059, where both husband and wife were named insureds and the statute set forth "any insured named in the policy" could reject UM/UDIM coverage, the court held a rejection by one was binding on the other *even though* the insured who executed the rejection was *not* authorized to act as an agent for the other spouse. (*Huguet,* 619 So. 2d at 188.) The court was unpersuaded by affidavits executed by both the husband and wife which stated the wife did not authorize or appoint her husband as her legal representative to take such action. (*Huguet,* 619 So. 2d at 188.) Although the language of the statute in that case more clearly indicated the act of one could bind the other insureds, we find *Huguet* persuasive.

The case of *Hall v. Allstate Insurance Co.* (1989), 53 Wash. App.

865, 770 P.2d 1082, *appeal denied* (1989), 113 Wash. 2d 1002, 777 P.2d 1051, is almost identical factually to the present case. In *Hall*, the husband applied for an insurance policy, listing both his wife and himself as named insureds, and signed a waiver of UM/UDIM coverage along with the application. Later, the wife was injured in an accident with an underinsured motorist and was denied UDIM coverage on the basis of the waiver signed by her husband. The wife contended she was neither consulted about nor did she consent to the waiver of UDIM coverage on her behalf and was not bound by the waiver. The statute in effect when the policy was procured stated "the named insured may reject" UM/UDIM coverage. (*Hall*, 53 Wash. App. at 866, 770 P.2d at 1083.) The court held when purchasing automobile insurance, a spouse has the right to waive UM/UDIM coverage for both spouses. (*Hall*, 53 Wash. App. at 868, 770 P.2d at 1084.) The court concluded the husband's rejection of UM/UDIM coverage was binding upon his wife and could see no reason why rejection of UM/UDIM coverage should be treated differently than any other provision of the insurance contract. *Hall*, 53 Wash. App. at 867, 770 P.2d at 1084; 2 I. Schermer, Automobile Liability Insurance § 36.04[1], at 36—13 (3d ed. 1995).

The *Hall* court commented on the later enacted legislative amendment to the statute, in which the phrase "the named insured" was changed to "a named insured or spouse" (*Hall*, 53 Wash. App. at 867, 770 P.2d at 1083) and inferred from this change and the legislative history "when the possibility of ambiguity was suggested, the Legislature promptly made explicit the right of a spouse to act in regard to [UM/UDIM] coverage in the same manner as to the other terms of the contract." *Hall*, 53 Wash. App. at 867-68, 770 P.2d at 1084.

As defendant points out, the statute at issue in the present case was significantly changed in 1990, effective after the Messerlys' application for insurance, so the word "applicant" appeared throughout the section on UM coverage (Ill. Rev. Stat. 1991, ch. 73, pars. 755a—2(1), (2), (3)). In its new form, the statute reads "[e]ach insurance company providing the coverage must provide *applicants* with a brief description of the coverage"; and the section describing who may reject additional coverage sets forth "[t]he *applicant* may reject additional uninsured motorist coverage in excess of the limits set forth in Section 7—203 of the Illinois Vehicle Code." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 73, pars. 755a—2(1), (2) (now 215 ILCS 5/143a—2(1), (2) (West 1994)).) Thus, the new version leaves no room for doubt as to whom UM coverage must be explained. As did the court in *Hall*, we find the amendment to the statute clarified what had always

been the law and did not substantively change what had previously been required.

The reasoning behind the *Hall* court's decision is sensible. It is inconsistent for plaintiff to argue (1) she was covered by the policy procured exclusively by her husband but admittedly for her benefit; (2) she was entitled to recover from defendant under the terms of the policy; but (3) with respect to one aspect of the policy, her husband acted without her authority and his decision cannot bind her. To allow such an argument would permit plaintiff to accept the benefit of the bargain her husband made on her behalf but not the burden.

Plaintiff foresees a return to the "dark ages" if this court holds husbands are allowed to waive statutorily created rights in their wives. This argument is not strong given the context in which it is brought, namely, the procurement of insurance policies. Both the case law and common sense show us the way the majority of families obtain insurance: one person representing the family meets with an insurance agent, applies for coverage, signs the necessary documents, and lists those to be covered under the policy. We hold a legally sufficient offer of UM and UDIM coverage made to one named insured satisfies the offer requirement of section 143a—2 of the Code. This interpretation of the statute is gender neutral. The result of this case would be exactly the same if plaintiff had procured insurance on behalf of herself and her husband. Therefore, defendant's concerns regarding the social implications of such an interpretation merit little discussion.

Requiring every potential "insured," or "additional insured," or "household member" who may be covered under a policy to visit or speak with an insurance agent in order to be given an offer of additional UM/UDIM coverage would be impractical. The legislature amended section 143a—2 of the Code to state only the *applicant* must be given a description of and may waive the offer of additional UM/UDIM coverage and the *applicant's* waiver is to be binding on all insureds under the policy. (Ill. Rev. Stat. 1991, ch. 73, pars. 755a—2(1), (2), (3).) The amendment confirms our interpretation of the offer requirement and we are confident such an interpretation was always intended.

Requiring offers of UM/UDIM coverage to be made to all insureds under automobile policies would be contrary to reasonable business practices from which both insurers and consumers benefit. Furthermore, it would be inconsistent to find plaintiff is covered under the terms of a policy which benefit her but is not bound by the terms which do not benefit her. Plaintiff relied on her spouse to make decisions on her behalf in procuring automobile insurance; thus, she

should be bound by those decisions. An offer of UM coverage was made as required by the statute and, as the applicant and a named insured, Richard rejected the offer, thereby binding all insureds under the policy. We reverse the trial court's holding to the contrary.

Reversed.

COOK, P.J., and GREEN, J., concur.