597 S.E.2d 165

**NATIONWIDE MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Julius PRIOLEAU and Paula Prioleau, Respondents.**

**No. 3781.**

Court of Appeals of South Carolina.

Submitted March 8, 2004.

Decided April 26, 2004.

Rehearing Denied June 25, 2004.

Robert C. Brown, of Columbia, for Appellant.

Arthur Aiken and Howard Hammer, of Columbia, for Respondents.

HUFF, J.:

Nationwide Mutual Insurance Company brought this declaratory judgment action to determine whether Paula Prioleau was entitled to underinsured motorist (UIM) coverage under

her automobile insurance policy purchased from Nationwide. The trial court found no meaningful offer of UIM coverage had been made to Paula, and she was therefore entitled to have her policy reformed to include UIM coverage up to the limits of the policy. Nationwide appeals. We reverse.

## FACTUAL/PROCEDURAL BACKGROUND

On April 25, 1997, Julius Prioleau applied for automobile insurance with Nationwide. The application was completed in the names of "Julius and Paula Prioleau," but only Julius went to the insurance agency to apply for the insurance, and only Julius signed as an applicant. At the same time that Julius signed the application, he was presented with an "Offer of Optional Additional Uninsured and Underinsured Automobile Insurance Coverages" form. This form described the available UIM coverage and requested that Julius either accept or reject the additional coverage. Julius alone signed the form, rejecting the UIM coverage. The policy issued by Nationwide, however, listed both "Julius and Paula Prioleau" as the named insureds.

On February 3, 1998, Paula Prioleau was involved in an automobile accident while driving one of the vehicles covered by the Prioleaus' policy with Nationwide. Paula sustained bodily injuries as a result of the accident and made a claim against the at-fault driver's insurance carrier. The at-fault driver's insurance carrier paid Paula the liability policy limits. Paula then asserted an underinsured motorist claim against Nationwide.

At trial, the parties presented the deposition testimony of both Paula and Julius, as well as the in-court testimony of Paula. In his deposition, Julius testified that normally he and his wife handled the acquisition of insurance together, and he could not remember why Paula did not accompany him when he obtained the policy from Nationwide. Paula testified by way of deposition that she did not have anything to do with the acquisition of the Nationwide insurance policy, and although she knew they had to obtain insurance, she did not know her husband was going to get it that day. She could not remember whether it was she or her husband who handled getting their insurance in the two years between the time they

returned from Germany in 1995 until Julius acquired the Nationwide policy in 1997. In her testimony before the trial court, Paula stated that Julius did not have authority from her to act as her agent in connection with the application of insurance with Nationwide. She admitted, however, that she knew her husband was "going to get some insurance," and she did not object to him going and getting the insurance, "because [she] didn't know when he was going."

Nationwide argued the rejection of UIM coverage form signed by Julius Prioleau was a valid rejection under South Carolina law, and it was not required to also obtain the signature of Paula rejecting UIM coverage, as Julius was the named insured and the only applicant for the policy. Alternatively, Nationwide claimed that the form was sufficient because Julius was acting as the agent for his wife when he obtained the insurance policy. The trial court rejected both claims and ordered the Prioleaus' policy be reformed to include underinsured motorist coverage up to the liability limits of the policy.

Nationwide appeals, arguing the trial court erred in ruling a valid and effective offer of UIM coverage had not been made when (1) such an offer had been made to and rejected by Julius Prioleau as the named insured and applicant for the policy and (2) such an offer had been made to and rejected by Julius Prioleau as the agent for his wife, Paula Prioleau. Because we find Julius necessarily acted as the agent for Paula, we reverse the trial court.

## STANDARD OF REVIEW

A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue. *Antley v. Nobel Ins. Co.*, 350 S.C. 621, 625, 567 S.E.2d 872, 874 (Ct.App.2002). As the underlying issue in the present case involves determination of coverage under an insurance policy, the action is at law. *State Farm Mut. Auto. Ins. Co. v. Calcutt*, 340 S.C. 231, 237, 530 S.E.2d 896, 898 (Ct.App. 2000). In an action at law, tried without a jury, the trial judge's factual findings will not be disturbed on appeal unless a review of the record reveals there is no evidence which reasonably supports the judge's findings. *Id.* " 'When an

appeal involves stipulated or undisputed facts, an appellate court is free to review whether the trial court properly applied the law to those facts.' In such cases, the appellate court is not required to defer to the trial court's legal conclusions." *Allstate Ins. Co. v. Estate of Hancock*, 345 S.C. 81, 84, 545 S.E.2d 845, 846 (Ct.App.2001) (quoting *WDW Props. v. City of Sumter*, 342 S.C. 6, 10, 535 S.E.2d 631, 632 (2000)).

## LAW/ANALYSIS

In addressing the agency issue, the trial court found the facts of the case did not support Nationwide's position that an agency relationship existed between Paula and Julius. In support of this finding, the court noted the uncontradicted testimony of Paula that "she was not aware of her husband's intention to sign the offer form and that she did not give her husband authority to act on her behalf, in any way, in matters having to do with automobile insurance." We find the trial judge erred as a matter of law in finding the facts did not support the existence of an agency relationship between Paula and Julius.

It is well-settled that the relationship of agency between a husband and wife is governed by the same rules which apply to other agencies, and no presumption arises from the mere fact of the marital relationship that one spouse is acting as agent for the other. *Bankers Trust of South Carolina v. Bruce*, 283 S.C. 408, 423, 323 S.E.2d 523, 532 (Ct.App. 1984). However, the relationship of agency need not depend upon express appointment and acceptance thereof. Rather, an agency relationship may be, and frequently is, implied or inferred from the words and conduct of the parties and the circumstances of the particular case. *Id.*

> The law creates the relationship of principal and agent if the parties, in the conduct of their affairs, actually place themselves in such position as requires the relationship to be inferred by the courts, and if, from the facts and circumstances of the particular case, it appears that there was at least an implied intention to create it, the relation may be held to exist, notwithstanding a denial by the alleged principal, and whether or not the parties understood it to be an agency.

*Crystal Ice Co. of Columbia v. First Colonial Corp.,* 273 S.C. 306, 309, 257 S.E.2d 496, 497 (1979).

In her testimony, Paula admitted she knew she and Julius had to obtain insurance and that she knew her husband was "going to get some insurance," even though she did not know when he was going to get it or that he was getting it that particular day. While she stated her husband did not "have authority from [her] to act as [her] agent in connection with [the] application" for insurance with Nationwide, this testimony is nothing more than a denial of any **express** authority given by Paula to Julius. The law is clear, however, that the relationship of agency need not depend upon express appointment and acceptance thereof, but may be, and frequently is, implied by the words and conduct of the parties and the circumstances of the particular case. Indeed, the law creates the relationship of principal and agent where the parties, in the conduct of their affairs, actually place themselves in such position as requires the relationship to be inferred by the courts. *Crystal Ice Co. of Columbia,* 273 S.C. at 309, 257 S.E.2d at 497.

Here, Paula and Julius, by their conduct, placed themselves in such a position as required an agency relationship to be inferred by the courts, and the only reasonable conclusion from the facts of this case is that an implied agency existed between Paula and Julius. Otherwise, Paula is repudiating the very contract under which she seeks reformation. As noted by the Appellate Court of Illinois in a similar case, it would be inconsistent to allow a spouse under such facts to argue that

> (1) she was covered by the policy procured exclusively by her husband but admittedly for her benefit; (2) she was entitled to recover from [the insurance company] under the terms of the policy; but (3) with respect to one aspect of the policy, her husband acted without her authority and his decision cannot bind her. To allow such an argument would permit [the wife] to accept the benefit of the bargain her husband made on her behalf but not the burden.

*Messerly v. State Farm Mut. Auto. Ins. Co.,* 277 Ill.App.3d 1065, 214 Ill.Dec. 794, 662 N.E.2d 148, 151 (1996).

## CONCLUSION

While the evidence supports a finding that no **express** agency relationship existed between Paula and her husband, the facts clearly demonstrate an **implied** agency existed between the parties for the purpose of acquiring the automobile insurance policy in question. By making a claim under the policy, Paula has essentially placed herself in such a position that the court must infer an agency relationship. Otherwise, no policy would exist under which Paula could claim UIM coverage. Accordingly, the record reveals there is no evidence which reasonably supports the trial court's finding of the non-existence of an agency relationship between Paula and her husband.[1] The judgment of the trial court is therefore

**REVERSED.**

STILWELL, J. and CURETON, A.J., concur.

---

1.  It should be noted that the matter at issue here is the existence of an agency relationship, not the scope. Here, we are not dealing with a situation where one person gives another only limited authority to act as an agent in obtaining specific types and levels of coverage. Accordingly, this opinion does not imply blanket authority when a spouse is authorized to act in some matter on behalf of the other, and it does not address the issue of whether an agent's authority has been exceeded.