717 S.E.2d 74

**Douglas Earl STILTNER and Christine Rene Stiltner, Appellants,**

v.

**USAA CASUALTY INSURANCE COMPANY, Respondent.**

No. 4852.

Court of Appeals of South Carolina.

Heard May 5, 2011.

Decided July 13, 2011.

184

Blake Alexander Hewitt and John S. Nichols, both of Columbia, and Bryan D. Ramey, of Piedmont, for Appellants.

J.R. Murphy, of Columbia, for Respondent.

THOMAS, J.

Douglas Earl Stiltner (Mr. Stiltner) and Christine Rene Stiltner (Mrs. Stiltner) sued USAA Casualty Insurance Company seeking reformation of an automobile insurance policy to include underinsured motorist coverage (UIM coverage) in the same limits as the liability coverage in the policy. On cross-motions for summary judgment, the trial court issued an order finding as a matter of law that (1) USAA made a meaningful offer of UIM coverage to its insured, Mr. Stiltner, and (2) Mrs. Stiltner's rejection of the offer was binding on both Mr. and Mrs. Stiltner. The Stiltners appeal. We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

Since 1990 or 1991, Mr. Stiltner has had his vehicles insured by USAA. After Mr. and Mrs. Stiltner married in 1998, Mr. Stiltner added Mrs. Stiltner to his policy as an operator. At some point, he raised his limits to 100,000/300,000/50,000. At no time before the Stiltners sued USAA has Mr. Stiltner ever had UIM coverage on his policy.

In 2000, USAA mailed Mr. Stiltner offer forms for uninsured motorist coverage (UM coverage) and UIM coverage. On October 17, 2000, both forms were faxed to USAA from Mrs. Stiltner's place of employment. The form offering UM coverage had handwritten "x's" indicating various selected limits of UM coverage, but also had a handwritten checkmark indicating a rejection of the offer to purchase UM coverage. Similarly, the form for UIM coverage had "x" marks indicating selected limits of UIM coverage, but also a checkmark indicating a rejection of the offer to purchase UIM coverage. Both forms bore what appeared to be the signature of Mrs. Stiltner.

According to Richard Kennedy, a senior underwriter at USAA, the completed forms the Stiltners returned to USAA were internally inconsistent and a USAA member service representative who handled South Carolina insureds would have contacted them to discuss the discrepancy. Two days later, a form for UM coverage was faxed to USAA from Mrs. Stiltner's place of employment. This form bore the same "x" marks selecting limits for UM coverage, but also had a

checkmark in the space indicating acceptance of UM coverage. On the same day, a form for UIM coverage—in fact, the same form faxed to USAA two days ago—was faxed to USAA from Mrs. Stiltner's place of employment. This form, however, was altered to remove the "x" marks indicating selected limits for UIM coverage, but retained the checkmark indicating purchase of UIM coverage was rejected. Although neither Mr. nor Mrs. Stiltner specifically recalled receiving the UIM offer form, neither disputed that it was Mrs. Stiltner's signature on the form indicating both a rejection of UIM coverage and an acknowledgement of the offer.

Mr. Stiltner generally handled the couple's insurance matters; however, Mrs. Stiltner was authorized to handle such matters provided she made no unilateral changes in the policy and communicated with Mr. Stiltner before taking any action. In her deposition, Mrs. Stiltner testified that, if she had handled a matter concerning Mr. Stiltner's insurance policy, she "would have just kept things the way they were, the way he had it before" and would not have signed a document for the policy without Mr. Stiltner's permission. Mr. Stiltner, however, maintained he never asked Mrs. Stiltner to sign any USAA forms or discussed with her the various types of coverage on his USAA automobile insurance policy.

In March 2007, the Stiltners were both seriously injured when another driver failed to yield the right of way and drove into the path of their motorcycle. Their combined medical expenses approached $500,000, and neither had completed treatment at the time of the hearing in the present matter. The at-fault driver was covered by an insurance policy with liability limits of only $25,000 per person and $50,000 per occurrence. The Stiltners accepted the at-fault driver's liability limits in exchange for a covenant not to execute judgment, allowing them to pursue other available insurance coverage.

The Stiltners then brought the present action against USAA, seeking a declaratory judgment that (1) USAA did not make a meaningful offer of UIM coverage, (2) Mr. Stiltner's policy should be reformed to include UIM coverage with limits equal to his liability limits of 100,000/300,000/50,000, (3) the Stiltners were both Class I insureds, and (4) the Stiltners

could stack UIM coverage to fully compensate them for their injuries.

USAA filed a general denial and moved for summary judgment after the parties completed discovery. In support of its motion, USAA asserted (1) Mrs. Stiltner had signed a form rejecting UIM coverage, (2) USAA had made a meaningful offer of UIM coverage, (3) Mrs. Stiltner acted as Mr. Stiltner's agent when she signed the form rejecting UIM coverage, and (4) it would be inequitable for Mrs. Stiltner to escape the effect of her own selection.

The Stiltners then filed a cross-motion for summary judgment, arguing among other things, the rejection form allegedly signed by Mrs. Stiltner was not a valid rejection of UIM coverage. The trial court conducted a hearing on the cross-motions and later issued an order granting summary judgment to USAA and denying summary judgment to the Stiltners. The Stiltners then filed their notice of appeal.

## ISSUES

I.  Did the trial court err in finding Mrs. Stiltner had the authority to act as Mr. Stiltner's agent when she signed the form rejecting UIM coverage on his policy?

II. If Mrs. Stiltner had the authority to take action on Mr. Stiltner's insurance policy, is there a reasonable dispute as to whether she was acting within the scope of that authority?

III. Should this court uphold the grant of summary judgment on the ground that Mr. Stiltner, in failing to take any corrective action after receiving policy declarations and renewal notices for a period of over six years, ratified Mrs. Stiltner's rejection of UIM coverage?

IV. Should this court uphold summary judgment as to Mrs. Stiltner on the ground that she should be estopped from denying her own rejection of coverage?

## STANDARD OF REVIEW

"In reviewing the grant of a summary judgment motion, the appellate court applies the same standard that governs the trial court under Rule 56(c), SCRCP." *Boyd v. BellSouth Tel.*

*Tel. Co.*, 369 S.C. 410, 415, 633 S.E.2d 136, 138 (2006). "Under Rule 56, SCRCP, a party is entitled to a judgment as a matter of law if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Id.* "In determining whether any triable issues of fact exist for summary judgment purposes, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party." *Id.* "[I]n cases applying a preponderance of the evidence burden of proof, the non-moving party is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment." *Hancock v. Mid–South Mgmt. Co.*, 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009).

## LAW/ANALYSIS

I.  Whether Mrs. Stiltner had authority to reject UIM coverage on behalf of Mr. Stiltner

██  The Stiltners first argue the trial court erred in concluding that Mrs. Stiltner had authority to transact matters under Mrs. Stiltner's automobile policy as long as she discussed them with Mr. Stiltner in advance and did not make any changes to the policy. We disagree.

██  "The relationship of agency between a husband and wife is governed by the same rules which apply to other agencies[,] . . . [and] no presumption arises from the mere fact of the marital relationship." *Bankers Trust of S.C. v. Bruce*, 283 S.C. 408, 423, 323 S.E.2d 523, 532 (Ct.App.1984). Under such rules, "the relationship of agency need not depend upon express appointment and acceptance thereof. Rather, the agency relationship may be, and frequently is, implied or inferred from the words and conduct of the parties and the circumstances of the particular case." *Nationwide Mut. Ins. Co. v. Prioleau*, 359 S.C. 238, 242, 597 S.E.2d 165, 168 (Ct.App. 2004).

The trial court noted Mr. Stiltner, during his deposition, "confirmed [Mrs. Stiltner] had authority to transact matters under his automobile insurance policy as long as she did not make any changes or left things as they were"; however, the

court further noted Mr. Stiltner "also indicated that she was to discuss any matters with him before she handled it." According to this testimony and the trial court's ruling, Mrs. Stiltner could have rejected UIM coverage on Mr. Stiltner's behalf if she had discussed it with him before doing so. The Stiltners do not dispute that Mrs. Stiltner had authority to sign insurance documents for Mr. Stiltner, provided these prerequisites were met. In her deposition, Mrs. Stiltner testified she would not have signed a document for Mr. Stiltner's automobile policy without discussing it with him first or without him knowing anything about it. Viewing the evidence in the light most favorable to the Stiltners, then, we agree with the trial court that Mrs. Stiltner had the implied authority to act on Mr. Stiltner's behalf regarding his automobile insurance coverage provided her actions did not change his existing coverage and she consulted Mr. Stiltner before she acted.

II.   Whether Mrs. Stiltner was acting within the scope of her authority

The Stiltners argue that if Mrs. Stiltner had any authority to take action on Mr. Stiltner's automobile insurance policy, when the evidence is viewed in the light most favorable to them, there remains a reasonable factual dispute as to whether Mrs. Stiltner was acting within the scope of her authority. We agree.

In finding that Mrs. Stiltner was acting within her authority when she signed the form rejecting UIM coverage, the trial court relied on (1) Mr. Stiltner's statement that Mrs. Stiltner had authority to transact matters under his automobile insurance policy as long as she did not make any changes and discussed them with him in advance and (2) Mrs. Stiltner's statements during her deposition that she would not have signed a document for the insurance policy without Mr. Stiltner's permission or contrary to his instructions. Based on these statements, the court reasoned that Mrs. Stiltner's signature indicating a rejection of UIM coverage was conclusive proof that she discussed the matter with Mr. Stiltner before signing the form. What the court overlooked, however, was Mr. Stiltner's testimony that he did not discuss any such form with his wife. Such testimony, if believed by a jury,

would support a finding that, notwithstanding the Stiltners' usual practice of discussing insurance matters before signing the corresponding forms, Mrs. Stiltner was not acting within the scope of her authority when she signed the form rejecting UIM coverage. This evidence, then, would be at least a scintilla of evidence precluding summary judgment. *See Hancock*, 381 S.C. at 330–31, 673 S.E.2d at 803 (clarifying that "more than a scintilla of evidence" is necessary "to withstand a motion for summary judgment" only "in cases requiring a heightened burden of proof or in cases applying federal law").

III.   Ratification

■   USAA argues that even if Mrs. Stiltner was not acting within her authority as Mr. Stiltner's agent when she rejected UIM coverage, Mr. Stiltner ratified her actions when he failed to take corrective action after receiving policy declarations and renewal notices for a period of over six years that showed he did not have UIM coverage. We hold it would be premature for this court to affirm the grant of summary judgment based on this ground.

■   The possibility that an insured can ratify another's rejection of UIM coverage on behalf of the insured has been recognized in at least one reported decision. *Nationwide Mut. Ins. Co. v. Powell*, 292 F.3d 201, 205 (4th Cir.2002). One asserting ratification must establish the following three elements: (1) acceptance by the principal of the benefits of the agent's acts, (2) the principal's full knowledge of the facts, and (3) circumstances or an affirmative election demonstrating the principal's intent to accept the unauthorized arrangements. *Lincoln v. Aetna Cas. & Sur. Co.*, 300 S.C. 188, 191, 386 S.E.2d 801, 803 (Ct.App.1989). Absent an admission by the insured that he or she has ratified a rejection of UIM coverage, "[w]hether or not there has been a ratification of an unauthorized act by acceptance or retention of benefits thereof is usually a question of fact for the jury and not one of law for the court." *Fuller v. E. Fire & Cas. Ins. Co.*, 240 S.C. 75, 86, 124 S.E.2d 602, 608 (1962). Moreover, "mere silence or failure of a principal to repudiate the unauthorized act of an agent does not necessarily constitute a ratification, unless the silence or acquiescence in question cannot be explained on any other

theory than that of ratification." 2A C.J.S. *Agency* § 71 (2003).

Here, Mr. Stiltner presented evidence that he did not understand the difference between UM coverage and UIM coverage until he and Mrs. Stiltner were involved in the accident that led to this lawsuit and, until that time, assumed he had what he needed to be "well-covered." Furthermore, there was evidence that he was unaware that Mrs. Stiltner had purported to reject UIM coverage on his behalf. We therefore hold that factual issues remain as to whether USAA can assert ratification as a defense to the Stiltner's request for reformation of their policy. *See Restatement (Third) of Agency*, § 4.06 cmt.b (2006) (stating ratification requires that the principal have actual knowledge of the relevant material facts).

IV. Estoppel as to Mrs. Stiltner

█ USAA further maintains that even if the policy is reformed, Mrs. Stiltner should have been estopped from denying her own rejection of UIM coverage. USAA contends that agency principles support this reasoning. We disagree.

In support of its argument for estoppel, USAA cites *Bonnette v. Robles*, 740 So.2d 261, 263 (La.Ct.App.1999), in which a wife who had signed a form opting for a lower level of UM coverage than what she could have selected was held to "be estopped to deny the validity of her legal representative capacity for purposes of increasing her own UM benefits limits when she plainly would have represented to the insurer, by signing the documents, that she had the legal authority to sign as [her husband's] representative." That decision, however, was based on a statutory provision allowing for such action by either "the named insured or his legal representative." La. Rev.Stat. Ann. § 22:1295 (2009) (formerly La.Rev.Stat. Ann. § 22:1406). In contrast, the South Carolina provision on "knowing selection of coverage," does not reference the possibility of a legal representative acting on behalf of an insured in rejecting UIM coverage. S.C.Code Ann. § 38–77–350(B) (2002).

█ A party claiming estoppel must show, among other things, reasonable reliance on the conduct of the party to be estopped. *Provident Life and Accident Ins. Co. v. Driver*, 317

S.C. 471, 477, 451 S.E.2d 924, 928 (Ct.App.1994). This is consistent with the following comments from the Restatement (Third) of Agency:

Whether a person makes an implied representation of authority is a question of fact to be determined by inferences to be drawn from the person's conduct. . . . It is a question of fact whether the manner in which the purported agent made the statement was effective as a manifestation made to the third party.

*Restatement (Third) of Agency* § 6.10 cmt.c (2006). Thus far, we have determined that the question of whether Mrs. Stiltner was acting within the scope of her authority when she signed the form rejecting UIM coverage on behalf of her husband could not be decided as a matter of law based on the evidence presented at the summary judgment hearing. Furthermore, USAA has not presented any evidence—such as a prior course of dealing between the parties—that would establish reasonable reliance on its part as a matter of law. We therefore hold USAA was not entitled to summary judgment on the issue of whether Mrs. Stiltner's rejection of UIM coverage should be binding on her.

## CONCLUSION

We agree with the trial court that Mrs. Stiltner had the implied authority to transact matters concerning Mr. Stiltner's automobile insurance coverage provided her actions did not change Mr. Stiltner's existing coverage and she consulted with Mr. Stiltner before acting. We further hold, however, that there is a genuine issue of material fact as to whether Mrs. Stiltner acted within her scope of authority when she rejected UIM coverage on Mr. Stiltner's insurance policy and remand this matter for a trial on the merits. We reject USAA's arguments that it is entitled to summary judgment on the ground of ratification and that Mrs. Stiltner should be estopped from denying rejection of UIM coverage on her own behalf.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

HUFF and WILLIAMS, JJ., concur.