ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, Plaintiff,

v.

Joseph and Amanda SIMPSON, Defendants.

Civil Action No. 8:15–1908–HMH

United States District Court, D. South Carolina, Anderson Division.

Signed January 28, 2016

Geoffrey William Gibbon, McAngus Goudelock and Courie, Greenville, SC, for Plaintiff.

Eugene Clark Covington, Jr., Covington Patrick Hagins Stern and Lewis, Greenville, SC, for Defendants.

## OPINION & ORDER

Henry M. Herlong, Jr., Senior United States District Judge

This matter is before the court on cross-motions for summary judgment. For the reasons stated below, the court grants the Defendants' motion for summary judgment

and denies Allstate Fire and Casualty Insurance Company's ("Allstate") motion for summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Allstate filed the instant declaratory judgment action seeking a declaration that "it is not obligated to pay or provide" underinsured motorist ("UIM") coverage under insurance policy number 9 63 649818 04/18 ("Policy") issued by Allstate to Amanda Simpson ("Amanda") and Joseph Simpson ("Joseph") because Amanda validly declined UIM coverage and coverage should not be added pursuant to *State Farm Mutual Automobile Insurance Co. v. Wannamaker*, 291 S.C. 518,354 S.E.2d 555 (S.C.1987). (Compl., prayer, ECF No. 1; Pl. Mem. Supp. Summ. J. Ex. D (Policy Declarations Pages), ECF No. 21–5.) On April 11, 2011, Amanda obtained a new policy[1] to insure a 1999 Ford, which was titled in her name, and a 2002 Chevy Malibu, which was titled in both Amanda and Joseph's name. (Pl. Mem. Supp. Summ. J. Ex. D (Policy Declarations Pages), ECF No. 21–5.) The Policy coverage period was April 18, 2011 to October 18, 2011.[2] (*Id.* Ex. D (Policy Declarations Pages), ECF No. 21–5.) Further, the Policy indicates that Allstate investigated the driving backgrounds of Amanda and Joseph and assigned a good driver rating to both. (*Id.* Ex. D (Policy Declarations Pages), ECF No. 21–5.)

At the time the Policy issued, Amanda was employed as a customer service representative for an Allstate agency. (*Id.* Ex. C (Amanda Dep. at 16), ECF No. 21–4.) As part of her job, Amanda stated that she

---

1. Allstate has submitted an affidavit from Kevin Nix, Product Division Manager for Allstate stating that it had not issued any insurance policy to Amanda prior to the issuance of the policy on April 18, 2011. (Kevin Nix Aff. ¶ 8, ECF No. 29.) The Defendants contend that Amanda was insured by Allstate prior to this date. This factual dispute is not material and has no impact on the court's decision.

2. The Policy was renewed semi-annually with the last Policy coverage period expiring April 18, 2015. (Pl. Mem. Supp. Summ. J. 2, ECF No. 21–1.)

prepared policies and explained UIM coverage. (Id. Ex. C (Amanda Dep. at 16), ECF No. 21–4.) On the Policy, Amanda and Joseph are both listed as named insureds. (Pl. Mem. Supp. Summ. J. Ex. D (Policy Declarations Pages), ECF No. 21–5.) Amanda completed and signed the declination form for UIM coverage. (Id. Ex. A (UIM offer form), ECF No. 21–2.) Amanda and Joseph were a couple and living together in April 2011, and they married on June 1, 2012. (Id. Ex. C (Amanda Dep. at 21), ECF No. 21–4.); Ex. F (Joseph Dep. at 5), ECF No. 21–6.) The Policy was amended in 2013 to reflect Amanda's name change from Amanda Taylor to Amanda Simpson. (Id. at 2, ECF No. 21–1.) Joseph testified that he did not have car insurance in April 2011, but that he had been covered previously by Nationwide until the engine blew up in his vehicle. (Id. Ex. F (Joseph Dep. at 6–7), ECF No. 21–6.) Both Amanda and Joseph testified that they never discussed any insurance issues together, including UIM coverage, other than Amanda telling Joseph that she had added him to the Policy. (Id. Ex. C (Amanda Dep. at 45, 65, ECF No. 21–4.) Joseph testified that he did not know that Amanda had obtained insurance for him until "she came home one day and told me that I had been added to the policy." (Pl. Mem. Supp. Summ. J. Ex. F (Joseph Dep. at 8), ECF No. 21–6.) Amanda testified that she did not realize she had added Joseph as a named insured. (Id. Ex. C (Amanda Dep. at 45), ECF No. 21–4.) Joseph testified that he thought it was "okay" and "cool" that he was on the Policy. (Id. Ex. F (Joseph Dep. at 8), ECF No. 21–6.)

On October 12, 2013, the Defendants were involved in an automobile accident with another vehicle that was being operated by an impaired driver, who passed away as a result of injuries received in the accident. The Defendants filed a lawsuit against the estate of the impaired driver,

which is currently pending in Pickens County, South Carolina, Court of Common Pleas, Civil Action Number 2015–CP–39–105. The Defendants have served Allstate with a notice of their claim for UIM coverage.

On November 23, 2015, Allstate filed a motion for summary judgment on its declaratory judgment claim. (Pl. Mot. Summ. J., ECF No. 21.) On December 7, 2015, the Defendants responded in opposition and filed a motion for summary judgment on Joseph's counterclaim seeking reformation of the Policy. (Defs. Resp. Opp'n Pl. Mot. Summ. J., ECF No. 23; Defs. Mot. Summ. J., ECF No. 24.) Allstate filed a reply to its motion for summary judgment on December 17, 2015, and a response in opposition to Defendants' motion for summary judgment on December 29, 2015. (Pl. Reply Supp. Mot. Summ. J., ECF No. 25; Pl. Resp. Opp'n Defs. Mot. Summ. J., ECF No. 26.) Further, on January 19, 2016, Allstate submitted an affidavit in support of its response in opposition to Defendants' motion for summary judgment. (Pl. Aff., ECF No. 29.) This matter is now ripe for consideration.

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the nonmoving party is to be believed and all justifiable inferences must be drawn in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of sum-

mary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505.

A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Monahan v. Cty. of Chesterfield, Va.,* 95 F.3d 1263, 1265 (4th Cir.1996) (internal quotation marks and citation omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Ballinger v. N.C. Agric. Extension Serv.,* 815 F.2d 1001, 1005 (4th Cir.1987) (internal quotation marks and citation omitted).

### B. Meaningful Offer

 Allstate alleges that it "is entitled to a presumption that there was a meaningful offer" because an offer of UIM coverage was made to Amanda, the Policy applicant and a named insured. (Pl. Mem. Supp. Summ. J. 6, ECF No. 21–1.) In contrast, the Defendants allege that Allstate was required to offer UIM coverage to Amanda and Joseph, individually, because they were both named insureds and applicants. (Defs. Mem. Opp'n Mot. Summ. J. 5, ECF No. 23.) "[T]he requirement of a meaningful offer of additional ... UIM coverage is intended to protect an insured. A meaningful offer of additional ... UIM [coverage] makes as certain as possible that an insured has actual knowledge of his options with respect to such coverages and is therefore able to make an informed decision with respect to his desired coverage." *Grinnell Corp. v. Wood,* 389 S.C. 350, 698 S.E.2d 796, 800 (2010) (citing *Floyd v. Nationwide Mut.*

*Ins. Co.,* 367 S.C. 253, 626 S.E.2d 6, 12 (2005)). Consequently, "[a]ll law with respect to a meaningful offer of additional ... UIM coverage must be applied so as to effectuate this stated purpose." *Id.* at 799; *Carter v. Standard Fire Ins. Co.,* 406 S.C. 609, 753 S.E.2d 515, 518 (2013) (" '[T]he UIM and [uninsured motorist] statutes are remedial in nature and enacted for the benefit of injured persons' and 'should be construed liberally to effect the purpose intended by the Legislature.' " (quoting *Floyd,* 626 S.E.2d at 10)).

> Accordingly, the insurer bears the burden of establishing that it made a meaningful offer of UIM coverage. Whether an insurer has met its burden in this regard is a question of fact. If the insurer fails to comply with its statutory duty to make a meaningful offer to the insured, the policy will be reformed, by operation of law, to include UIM coverage up to the limits of liability insurance carried by the insured.

*Liberty Mut. Fire Ins. Co. v. McKnight,* No. 2:14–CV–02145–PMD, 125 F.Supp.3d 602, 607–08, 2015 WL 4878834, at *3 (D.S.C. Aug. 14, 2015) (unpublished) (internal citations and quotation marks omitted); *Butler v. Unisun Ins. Co.,* 323 S.C. 402, 475 S.E.2d 758, 759–60 (1996). A meaningful offer requires that: "(1) the insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insured must be told that optional coverages are available for an additional premium." *State Farm Mut. Auto. Ins. Co. v. Wannamaker,* 291 S.C. 518, 354 S.E.2d 555, 556 (1987).

S.C.Code Ann. § 38–77–160 provides that automobile insurance carriers must

offer "at the option of the insured, [UIM] coverage up to the limits of the insured's liability coverage ...." Further, S.C.Code Ann. § 38–77–350(A) provides requirements for forms used in making offers of optional insurance coverage like UIM coverage and sets forth that

> [t]his form must be used by insurers for **all new applicants.** The form, at a minimum, must provide for each optional coverage required to be offered:
>
> (1) a brief and concise explanation of the coverage;
>
> (2) a list of available limits and the range of premiums for the limits;
>
> (3) a space to mark whether the insured chooses to accept or reject the coverage and a space to state the limits of coverage the insured desires;
>
> (4) a space for the insured to sign the form that acknowledges that the insured has been offered the optional coverages; and
>
> (5) the mailing address and telephone number of the insurance department that the applicant may contact if the applicant has any questions that the insurance agent is unable to answer.

S.C.Code Ann. § 38–77–350(A) (emphasis added). Additionally, subsection (B) provides that

> [i]f this form is signed by **the named insured,** after it has been completed by an insurance producer or a representative of the insurer, it is conclusively presumed that there was an informed, knowing selection of coverage and neither the insurance company nor an insurance agent is liable to the named insured or another insured under the policy for the insured's failure to purchase optional coverage or higher limits.

S.C.Code Ann. § 38–77–350(B) (emphasis added).

In *McDonald v. South Carolina Farm Bureau Insurance Co.,* 336 S.C. 120, 518 S.E.2d 624, 626 (App.1999), the South Carolina Court of Appeals found "no inconsistency in the term 'new applicant' in Section 38–77–350(A) and 'insured' in Section 38–77–160 finding that

> [c]learly, the legislature intended for insurers to afford all named insured the opportunity to accept or reject UIM coverage. In using the term "new applicant," the legislature simply distinguished between those who had never had an opportunity to reject UIM coverage and others, such as insureds renewing policies, who previously had made informed decisions about UIM coverage.

In *McDonald,* a mother gifted her vehicle to her son and the mother contacted the insurance company and had the insurance, which was in the name of the mother, "put in his [the son's] name." *Id.* at 625. The court continued:

> McDonald [the son] had never been a named insured with Farm Bureau prior to the insurance on the Mercury. He had never been given the opportunity to accept or reject UIM coverage. Although *McDonald* did not fill out an application, he paid a membership fee to become a named insured of Farm Bureau. Regardless of the manner in which Farm Bureau processed McDonald's request for his own insurance policy, McDonald was a new named insured with the carrier, entitled to an offer of UIM coverage. Any other construction of the statute would defeat the legislature's intent that all named insured be offered UIM coverage.

*McDonald,* 518 S.E.2d at 626. In the case at bar, Joseph is a named insured on the declarations page of the Policy and he had never had insurance with Allstate when the Policy was issued. (Pl. Mem. Supp. Summ. J. Ex. D (Policy Declarations Page), ECF No. 21–5.) Thus, he had never been offered the option of UIM coverage or to execute a UIM offer form.

Applying *McDonald* to the case at bar, Allstate was required to make a meaningful offer of UIM coverage to Joseph because he, along with Amanda, was a named insured on the Policy. In turn, Allstate was required to have Joseph complete the UIM offer form as set forth in S.C.Code Ann. § 38–77–350.

Further, Joseph was also an applicant on the Policy. Allstate had the right to reject insurance coverage for Joseph if it had so decided. It is clear from the Policy that Allstate considered certain factors in deciding to insure Joseph, such as age, gender, and driving record. (*Id.* Ex. D (Policy Declarations Pages), ECF No. 21–5.) Moreover, there is public policy favoring insureds in the context of UIM coverage as the statutes are remedial and interpreted liberally. Based on the foregoing, the court finds that Allstate was required to make a meaningful offer of UIM coverage to Joseph.

### C. Implied Agency

■■■ In addition, Allstate contends, even if it was required to make a meaningful offer of UIM coverage to Joseph, Amanda acted as an implied agent for Joseph in declining UIM coverage and that as a result, Joseph is bound by Amanda's decision. (Pl. Mem. Supp. Summ. J. 7–11, ECF No. 21–1.) Allstate relies heavily on the South Carolina Court of Appeals decision in *Nationwide Mutual Insurance Co. v. Prioleau*, 359 S.C. 238, 597 S.E.2d 165 (App.2004). The existence and scope of an agency relationship are questions of fact. *Holmes v. McKay*, 334 S.C. 433, 513 S.E.2d 851, 854 (App.1999); *Allstate Ins. Co. v. Estate of Hancock*, 345 S.C. 81, 545 S.E.2d 845, 848 n. 4 (App. 2001).

■■■ In *Prioleau*, the South Carolina Court of Appeals held that rejection of UIM coverage by one spouse is valid where evidence shows an implied agency relationship exists between them. "The

relation of agency need not depend upon express appointment and acceptance thereof ...." *Crystal Ice Co. v. First Colonial Corp.*, 273 S.C. 306, 257 S.E.2d 496, 497 (1979) (quoting 2A C.J.S. Agency § 52). Agency may be "implied from the words and conduct of the parties and the circumstances of the particular case." *City of Greenville v. Washington Am. League Baseball Club*, 205 S.C. 495, 32 S.E.2d 777, 781 (1945). It is well established that a principal is affected with constructive knowledge of all material facts of which his agent receives notice while acting within the scope of his authority. *Crystal Ice Co.*, 257 S.E.2d at 497. "[T]he relationship of agency between a husband and wife is governed by the same rules which apply to other agencies, and no presumption arises from the mere fact of the marital relationship that one spouse is acting as agent for the other." *Prioleau*, 597 S.E.2d at 168 (citing *Bankers Trust of S.C. v. Bruce*, 283 S.C. 408, 323 S.E.2d 523, 532 (App.1984)).

In *Prioleau*, the court held that a husband was authorized to reject UIM coverage on behalf of his wife pursuant to an implied agency relationship. *Id.* at 168. The husband and the wife were listed as named insureds on the policy, but the husband was the only person to complete the application and decline the UIM coverage. *Id.* at 166. Although the wife testified that her husband did not have authority from her to act as her agent, the court held that "the relationship of agency need not depend upon express appointment and acceptance thereof, but may be, and frequently is, implied by the words and conduct of the parties and the circumstances of the particular case." *Id.* at 168. An implied agency existed between the Prioleaus based not on their testimony but on their conduct. The court held:

The law creates the relationship of principal and agent if the parties, in the

conduct of their affairs, actually place themselves in such position as requires the relationship to be inferred by the courts, and if, from the facts and circumstances of the particular case, it appears that there was at least an implied intention to create it, the relation may be held to exist, notwithstanding a denial by the alleged principal, and whether or not the parties understood it to be an agency.

*Id.* (citing *Crystal Ice Co.,* 257 S.E.2d at 497). The court noted that

[i]n her testimony, Paula [the wife] admitted she knew she and Julius [her husband] had to obtain insurance and that she knew her husband was "going to get some insurance," even though she did not know when he was going to get it or that he was getting it that particular day. While she stated her husband did not "have authority from [her] to act as [her] agent in connection with [the] application" for insurance with Nationwide, this testimony is nothing more than a denial of any **express** authority given by Paula to Julius. The law is clear, however, that the relationship of agency need not depend upon express appointment and acceptance thereof, but may be, and frequently is, implied by the words and conduct of the parties and the circumstances of the particular case.

*Id.* (emphasis in original); *Nationwide Mut. Ins. Co. v. Powell,* 292 F.3d 201, 204 (4th Cir.2002) (finding that "presentation of a proper UIM coverage rejection form to a named insured's spouse does not constitute a meaningful offer of UIM coverage if the spouse is not acting as the named insured's agent"); *Allstate Ins. Co. v. Estate of Hancock,* 345 S.C. 81, 545 S.E.2d 845, 848 n. 4 (App.2001) (stating in dictum that it may be possible for a named insured's spouse to effectively reject UIM coverage on behalf of the named insured if the spouse is authorized to act on the named insured's behalf); *Stiltner v. USAA*

*Cas. Ins. Co.,* 395 S.C. 183, 717 S.E.2d 74, 77–78 (App.2011) (finding a limited implied agency between husband and wife, but that a genuine issue of material fact existed as to whether the wife was acting within the scope of her authority when she signed a form rejecting UIM insurance coverage). The *Prioleau* court concluded that

[h]ere, Paula and Julius, by their conduct, placed themselves in such a position as required an agency relationship to be inferred by the courts, and the only reasonable conclusion from the facts of this case is that an implied agency existed between Paula and Julius. Otherwise, Paula is repudiating the very contract under which she seeks reformation. As noted by the Appellate Court of Illinois in a similar case, it would be inconsistent to allow a spouse under such facts to argue that "(1) she was covered by the policy procured exclusively by her husband but admittedly for her benefit; (2) she was entitled to recover from [the insurance company] under the terms of the policy; but (3) with respect to one aspect of the policy, her husband acted without her authority and his decision cannot bind her. To allow such an argument would permit [the wife] to accept the benefit of the bargain her husband made on her behalf but not the burden."

*Prioleau,* 597 S.E.2d at 168 (quoting *Messerly v. State Farm Mut. Auto. Ins. Co.,* 277 Ill.App.3d 1065, 214 Ill.Dec. 794, 662 N.E.2d 148, 151 (1996). Notably, in the *Messerly* case, the Illinois court specifically confined its holding to spouses and did not base its decision on implied agency, instead finding that a spouse by virtue of the marriage had the authority to waive UIM coverage. *Id.* ("Plaintiff foresees a return to the 'dark ages' if this court holds husbands are allowed to waive statutorily created rights in their wives. This argu-

ment is not strong given the context in which it is brought, namely, the procurement of insurance policies. Both the case law and common sense show us the way the majority of families obtain insurance: one person representing the family meets with an insurance agent, applies for coverage, signs the necessary documents, and lists those to be covered under the policy.") Further, in *Messerly,* the court was relying on another decision, *Hall v. Allstate Insurance Co.,* 53 Wash.App. 865, 770 P.2d 1082, 1084 (1989), which held that "when purchasing automobile insurance, a spouse has the right to waive UIM coverage for both spouses" based on a state statute that provided that "[a] named insured or spouse may reject, in writing, underinsured motorist coverage for bodily injury or death...." Wash. Rev.Code § 48.22.030(4). Thus, the court finds that *Messerly* and *Hall* are unpersuasive and inapplicable to the facts of this case.

Moreover, Allstate's argument that Joseph is receiving the benefit of the bargain, but not the burden, ignores the fact that when an insurer fails to make a meaningful offer of UIM coverage the policy is reformed to include UIM coverage equal to the liability coverage amount. In *McDonald,* discussed above, a mother had contacted the insurance company to have automobile insurance she carried placed in her son's name. 518 S.E.2d at 625. The court found that the insurance company was required to offer the son UIM coverage, which it failed to do. *Id.* at 626. The court of appeals affirmed the trial court's decision to reform the policy. Thus, one could argue that the son received the benefit of UIM without the burden of having to pay an additional premium for UIM. The reasoning behind this is the legislature's intent that insureds have express knowledge regarding UIM coverage decisions.

In the case at bar, it is undisputed that there is no evidence that Amanda and

Joseph, an unmarried couple that resided together, had discussed automobile insurance at any time prior to the issuance of the Policy. (Pl. Mem. Supp. Summ. J. Ex. C (Amanda Dep. at 47), ECF No. 21–4.) Moreover, there is no evidence that Joseph knew that Amanda was obtaining insurance for him or had any understanding of UIM coverage. Specifically, there is no evidence that Joseph knew that UIM coverage had been offered and declined. Joseph testified that Amanda told him that he was insured under the Policy at some point in time after the Policy had been issued. (*Id.* Ex. F (Joseph Dep. at 8, 10), ECF No. 21–6.) Further, there is no evidence that Joseph had discussed any insurance matters of any kind at any time prior to obtaining the Policy. (*Id.* Ex. E (Joseph Dep. 10), ECF No. 21–6.)

Allstate emphasizes the fact that Amanda worked at an insurance agency and was familiar with UIM coverage and how it operated. (*Id.* Ex. C (Amanda Dep. at 16–17), ECF No. 21–4.) However, this fact has no impact on whether an implied agency existed between Joseph and Amanda based on their conduct as there is no evidence that Joseph relied on Amanda for insurance because of her employment. Moreover, Allstate emphasizes that Amanda and Joseph were married a little more than a year later after Amanda obtained the Policy. However, this fact has no impact on whether implied agency existed when Amanda applied for coverage with Allstate. 3 C.J.S. Agency § 587 ("Where a cause of action or defense is predicated on the theory of agency, the evidence must be sufficient to show the existence of the agency at the time of the transaction in question.").

Based on the foregoing, the court finds that there is no evidence in the record creating a genuine issue of material fact and no reasonable inference can be

drawn from the evidence to support any finding that an implied agency relationship existed between Amanda and Joseph.[3] *Fernander v. Thigpen*, 278 S.C. 140, 293 S.E.2d 424, 425 (1982) (internal quotation marks omitted) ("[Q]uestions of agency ordinarily should not be resolved by summary judgment where there are *any* facts giving rise to an inference of an agency relationship.") Further, the public policy underlying UIM coverage is to protect insureds and make sure they have actual knowledge of coverage options, which supports a finding of no implied agency under the facts of this case. Amanda purchased the Policy for the benefit of both herself and Joseph. Joseph was listed as a named insured on the Policy and no agency relationship existed between the Defendants. Thus, Allstate was required under South Carolina law to make a meaningful offer to all named insureds, which it failed to do. Based on the foregoing, the court finds that Allstate failed to make any offer of UIM coverage to Joseph. Therefore, the Policy is reformed to include UIM coverage for Joseph equal to the liability limits of the Policy. *Hanover Ins. Co. v. Horace Mann Ins. Co.*, 301 S.C. 55, 389 S.E.2d 657, 658–59 (1990); *Mathis v. State Farm Mut. Auto Ins. Co.*, 315 S.C. 71, 431 S.E.2d 619, 622 (App.1993).

It is therefore

**ORDERED** that Allstate's motion for summary judgment, document number 21, is denied. It is further

**ORDERED** that Defendants' motion for summary judgment, document number 24, is granted. It is further

---

3. To the extent Allstate is attempting to argue ratification by Joseph based on the continued renewal of the Policy, this argument fails. "One asserting ratification must establish the following three elements: (1) acceptance by the principal of the benefits of the agent's acts, (2) the principal's full knowledge of the facts, and (3) circumstances or an affirmative election demonstrating the principal's intent

**ORDERED** that the Policy is reformed to add UIM coverage for Joseph Simpson equal to the liability limits of the Policy retroactive to April 18, 2011.

**IT IS SO ORDERED.**

to accept the unauthorized arrangements." *Stiltner v. USAA Cas. Ins. Co.*, 395 S.C. 183, 717 S.E.2d 74, 78 (App.2011). There is no evidence to raise a genuine issue of material fact that Joseph knew that Amanda had declined UIM coverage until after the accident or that he accepted Amanda's declination of UIM coverage.