### SCOTTISH AMERICAN MORTGAGE COMPANY, LIMITED, v. DEAS.

1. **Married Women's Contracts.**—Where a married woman, either directly or through her agent, borrows money from another, the money so borrowed becomes at once a part of her separate estate, and her contract to repay the same is a contract with reference to her separate estate, which may be enforced against her; and the lender, in the absence of notice to the contrary, has a right to assume that the money was borrowed for the use of the married woman, and she is estopped from denying that fact, unless it is shown that the lender had notice to the contrary. *Hibernia Savings Institution* v. *Luhn*, 34 S. C., 176, approved.

2. **Ibid.—Agency.**—The application for a loan was signed with the name of a married woman by her husband, the lender believing the signature to be genuine. This application stated that the wife was the borrower; that she had live stock on the land offered as security; that it was not leased to any one, and no one else had a right of possession; that the only encumbrance was a small balance due on a mortgage given for supplies which would be paid out of this loan. The wife afterwards, knowing that a loan had been asked for from plaintiff, signed the notes and a mortgage of this land which was her separate property. The husband generally managed and attended to all of his wife's business. *Held*, that she had ratified the act of her husband in negotiating this loan and was bound by the statements contained in the application, and these statements justified the lender in believing that the money was borrowed for the wife's use.

3. **Ibid.—Ibid.**—Under the statement in the application that the money borrowed was to be used in part in removing a mortgage encumbrance, and the money having been almost wholly so used, and this prior mortgage having been given for supplies used on the wife's plantation under the husband's management as her agent, the loan now in question constituted a debt of the wife for which she was liable.

4. **Constitutionality of Statute.**—This court, especially when not full, will not declare an act of the legislature unconstitutional, unless necessary to a determination of the case.

Before WITHERSPOON, J., Kershaw, June, 1890.

Action by the Scottish American Mortgage Company, Limited, against Mary R. Deas and others. commenced September 26, 1889. The Circuit decree was as follows:

This is an action to foreclose a mortgage of four hundred acres of land, executed and delivered by the defendant, Mary R. Deas, a married woman, to plaintiff, March 15th, 1884, to secure the payment to plaintiff of said defendant's note of same date for $2,-500. The other defendants above named have been made parties as claiming interests in the premises embraced in said mortgage. It is admitted that on May 31st, 1889, there was a balance of $3,532.81 due on plaintiff's debt.

In her answer, the defendant, Mary R. Deas, alleges that the consideration of plaintiff's debt was money borrowed to pay the debt of her husband, the defendant, Allen Deas; that said debts were not contracted by her for the benefit of her separate estate, and that the defendant's notes and mortgage, described in plaintiff's complaint, do not create a charge or lien upon defendant's separate estate. The answer of the defendant, Allen Deas, alleges: 1, that the money realized upon the notes and mortgage was used by said defendant in paying his individual debts, which were not contracted for the benefit of the separate estate of Mary R. Deas; and 2, that he is in possession of 300 acres of the land described in the complaint as trustee for his minor children above named, defendants by virtue of a conveyance from the defendant, Henry G. Carrison. The defendants, minor children of Allen Deas and Mary R. Deas, answer by their guardian *ad litem*, submitting their rights to the protection of the court.

It appears that Allen Deas and Mary R. Deas executed a mortgage, February 5th, 1883, of the land described in the complaint to Henry G. Carrison, as survivor of D. W. Jordan & Co., containing a power of sale, under which the land was sold and conveyed to Henry G. Carrison,[1] who subsequently conveyed 300 acres of the land to the defendant, Allen Deas, as trustee, and the remaining one hundred acres to the defendant, W. R. Gard-

[1] This sale of the land was under a mortgage given by Allen Deas and Mary R. Deas to H. G. Carrison, survivor, on March 20, 1884.—REPORTER.

ner. The defendants, Henry G. Carrison and W. R. Gardner, in their answer submit that if plaintiff be adjudged entitled to a judgment of foreclosure, that portion of the land conveyed to Allen Deas, trustee, should first be sold in exoneration of the portion conveyed to the defendant, W. R. Gardner. It also appears that defendants, Pelzer, Rodgers & Co., obtained a judgment in Kershaw County against Allen Deas and Mary R. Deas for $1,443.71, on the 10th of June, 1885. In their answer these defendants set up their judgment as creating a lien upon the land described in the complaint.

It was referred to the master of Kershaw County to take and report the testimony to this court. Allen Deas and Mary R. Deas were the only witnesses examined before the master. After the plaintiff closed his direct evidence, and preceding the examination of Allen Deas on behalf of the defendant, Mary R. Deas, the attorney of Mary R. Deas gave notice that he would apply to this court for judgment in favor of the defendant, Mary R. Deas, upon the evidence introduced by plaintiff. The subsequent evidence on behalf of defendants was introduced before the master subject to this notice. It seems to me that the notice came too late after Mary R. Deas had offered evidence on her behalf.

There is no controversy, 1, as to the execution of the notes and mortgage by Mary R. Deas, as described in the complaint; 2, that Mary R. Deas was a married woman when she executed said notes and mortgage; 3, that the land described in the complaint is the separate estate of Mary R. Deas, and that she owned no other land in Kershaw County; and 4, that Allen Deas and his family lived upon said land, and that the land has been cultivated by Allen Deas, the husband, since his marriage in 1878. The only issue presented is as to the liability of the separate estate of Mary R. Deas to pay plaintiff's debt. In this State the capacity of a married woman to bind her separate estate has been held to be limited to contracts concerning or having reference to said separate estate. There is no declaration in the note or mortgage described in the complaint that they were executed by Mary R. Deas with reference to her separate estate. In the absence of such a declaration by Mary R. Deas, it is incumbent upon the plaintiff to show that the notes and mortgage

were executed by Mary R. Deas with reference to her separate estate.

It appears from the evidence submitted by the master that Allen Deas, the husband, applied in writing to the plaintiff, in the name of his wife, Mary R. Deas, to borrow the money for which Mary R. Deas executed to plaintiff her notes and mortgage. In answer to an inquiry in the application whether the land proposed as a security for the loan was encumbered, it is stated, "Small balance on mortgage given to get advances: will pay same out of portion of funds." Allen Deas testifies that he was not authorized by his wife to sign her name to said application; that he alone conducted the negotiations with plaintiff for the loan to pay an individual debt; that he, the husband, owed the defendant. Henry G. Carrison, as survivor of D. W. Jordan & Co., for agricultural supplies furnished during the year 1883.

Mary R. Deas testified that she did not, either verbally or in writing, constitute her husband, Allen Deas, as her agent to negotiate the loan from plaintiff; that she never made any statement either to Messrs. Palmer & Son, representing plaintiffs, or to the attorney, Mr. Shannon, to induce plaintiff to make the loan for which she executed her notes and mortgage; that she never saw the application *made in her name* by her husband to plaintiff for the loan until the application was introduced by plaintiff at the reference before the master; that the notes and mortgage to plaintiff were brought to her by her husband, who requested her to sign the papers, stating that he had to have the money; that at first she refused, but afterwards signed the papers, "because she was forced to do so as a wife and a Christian;" that she never received or directed the application of any of the borrowed money for which she executed her notes and mortgage to plaintiff.

In the light of this uncontradicted testimony, I fail to see how Mary R. Deas can be held bound by any statement contained in the application to the plaintiff to borrow the money for which her notes and mortgage were executed to plaintiff. It is admitted that of the $2,500.00 borrowed from plaintiff on the notes and mortage of Mary R. Deas $2.427.90 was applied to the satisfaction of a debt due to Henry G. Carrison, as survivor of D. W.

Jordan & Co., for supplies used in the cultivation of Mary R. Deas's land by her husband, Allen Deas, during the year 1883, that $21.60 of said sum was applied to insuring a house on said land, and that the balance of $50.50 was applied to the expenses of negotiating said loan.

Allen Deas and Mary R. Deas united in giving a mortgage of the land described in the complaint, as well as an agricultural lien upon the crops raised on said land during the year 1883, to secure the payment of the supplies furnished by Henry G. Carrison as survivor aforesaid. This mortgage was satisfied by the application of $2,427.90 of the money borrowed from plaintiff. Allen Deas and Mary R. Deas both testify that the debt to Carrison for supplies was the individual debt of *Allen Deas.* Carrison's books have not been produced to show to whom he gave the credit for the supplies furnished. Allen Deas testifies that Carrison asked him to give security for the supplies, and he induced his wife to sign the mortgage to Carrison. He also testifies that Carrison wanted his money for the supplies, and suggested that he would borrow the money from a loan association to pay him; that he, Deas, directed the payment to Carrison of the money borrowed from plaintiff. It appears that Allen Deas was insolvent when the supplies were furnished by Carrison, and that he is still insolvent.

Mary R. Deas testifies that she neither asked nor induced Carrison to furnish the supplies to herself or to her husband; that she merely signed the mortgage to Carrison at the request of her husband, without reading it. It does not appear that either the plaintiff or Henry G. Carrison was deceived by the conduct of or by a representation made by Mary R. Deas. Mary R. Deas testifies that her husband managed her business for her as a husband manages his wife's business for the benefit of the family, and that she never asked anything about it. This would not authorize the impression that Allen Deas acted as agent of Mary R. Deas in procuring supplies to cultivate his wife's land or in procuring the loan from plaintiff. Owing to the peculiar influence that a husband is naturally calculated to exercise over his wife, the proof as to the agency of the husband should be made stronger and more satisfactory than that furnished in this case.

I find as matter of fact: I. That Mary R. Deas did not execute the notes and mortgage to plaintiff, described in the complaint with reference to her separate estate. II. That the consideration of the notes and mortgage of Mary R. Deas was money borrowed from plaintiff by her husband, Allen Deas, to pay his individual debt to Henry G. Carrison for agricultural supplies. I conclude as a matter of law, that the separate estate of the defendant, Mary R. Deas, is not liable for the payment of the notes and mortgage described in the complaint.

It is therefore ordered and adjudged, that the plaintiff's complaint be dismissed with costs.

Plaintiff appealed on the following grounds:

I. That his honor erred in finding that Allen Deas was not the agent of Mary R. Deas, and should have found that he was such agent in his dealings and negotiations both with D. W. Jordan & Co. and with plaintiff.

II. That his honor erred in finding that the supplies advanced by D. W. Jordan & Co. were advanced to Allen Deas, and he should have found that they were advanced for the benefit and use of Mary R. Deas's plantation.

III. That his honor should have found that the mortgage given to D. W. Jordan & Co. was a contract as to Mary R. Deas's separate estate, and therefore a valid lien on the land thereby mortgaged.

IV. That his honor erred in not finding that plaintiff's money having been used to pay off the mortgage to D. W. Jordan & Co., Mary R. Deas's contract of repayment, secured by her notes and mortgage, was binding on her separate estate described in said mortgage to plaintiff.

V. That his honor erred in not finding that plaintiff having been induced to make this loan by representations of Allen Deas, agent of Mary R. Deas, and known to her at the time, that this money was to be used in paying off a former mortgage, and there being no evidence that plaintiff had any notice that such former mortgage was invalid, plaintiff should have had a decree for foreclosure, even if the mortgage to D. W. Jordan & Co. was invalid.

VI. That his honor erred in not finding that the plaintiff

should at least have had a decree for foreclosure to the extent of $21.60 and interest, the amount applied in insuring a house on said land, and, as a consequence, to the further extent of $50.50, the sum applied to the expenses of negotiating said loan.

VII. That his honor erred in not finding that Mary R. Deas, having purchased this land at a time when the law gave her absolute and unrestricted dominion over it, the general assembly could not by subsequent legislation restrict or limit that dominion ; and therefore the act of 1882 (Gen. Stat., § 2037), in so far as it attempts to prevent a married woman from mortgaging her separate estate previously acquired for whatever purpose she sees fit, is unconstitutional because it would impair a vested right.

VIII. That his honor erred in finding as matter of fact that Mary R. Deas did not execute the note and mortgage to plaintiff described in the complaint, with reference to her separate estate.

IX. That his honor erred in finding as matter of fact, that the consideration of the note and mortgage of Mary R. Deas was money borrowed from plaintiff by her husband, Allen Deas, to pay his individual debt to Henry G. Carrison for agricultural supplies.

X. That his honor erred in concluding as matter of law, that the separate estate of the defendant, Mary R. Deas, is not liable for the payment of the notes and mortgage described in the complaint.

*Messrs. W. M. Shannon* and *R. W. Shand*, for appellant.

*Messrs. P. H. Nelson* and *J. T. Hay*, contra.

February 16, 1892. The opinion of the court was delivered by

Mr. Chief Justice McIver.    The action in this case was for the foreclosure of a mortgage of real estate given by the defendant, Mrs. Mary R. Deas, to the plaintiff to secure the payment of sundry notes executed by her in favor of the plaintiff.    This mortgage and these notes, bearing date 15th of March, 1884, it is admitted, were executed by Mrs. Deas, but she being a married woman at the time, the defence is, that the contract evidenced by these papers was not such an one as she was capable

of making at the time, under the law as it then stood.   The con-
tract in question was made to secure the repayment of money
borrowed from the plaintiff, and one of the important inquiries
in the case is whether this money was borrowed by Mrs. Deas or
by her husband.   It seems that under the usage of the plaintiff
this money was loaned upon a written application, a copy of
which is set out in the "Case," signed "Mary R. Deas," though
the testimony shows that she did not in person sign her name,
but the same was signed by her husband and co defendant, Allen
Deas; but the testimony likewise shows, or at least tends to show,
that the signatures of husband and wife resembled each other so
much that one not familiar with them might readily take one for
the other.

This written application, amongst other items therein stated,
gives the name of the borrower as "Mary R. Deas," and the hus-
band's name as "Allen Deas."   It also states that the borrower
has certain specified stock on the land—horses, cows, mules, and
hogs; and in response to the inquiry whether the land proposed
to be mortgaged to the plaintiff is entirely free from encumbrance,
the answer is, "No; small balance on mortgage given to get ad-
vances.   Will pay same out of portion of funds."   And in re-
sponse to the inquiry whether the land is "leased to any one, or
has any person a right of possession thereof aside from yourself?"
the answer is, "No."   It is undisputed that the money borrowed
from plaintiff, or much the greater part of it, was used to pay a
debt secured by a prior mortgage of the same land to H. G. Car-
rison, the small balance of the amount loaned being appropriated
to the payment of insurance and the expense of negotiating the
loan by plaintiff.   The mortgage to Carrison was executed on the
1st of February, 1883, by Allen Deas and Mary R. Deas, his
wife, and is combined with a lien on the crops, as well as a mort-
gage on certain personal property—horses and mules.   This lien
and mortgage recites that the party of the first part, Carrison,
agrees to advance to the parties of the second part, Allen Deas
and Mary R. Deas, money and supplies "to enable them to
carry on their agricultural operations."

The case was referred to the master simply to take and report
the testimony.   The only oral testimony taken by the master is

4—35

that of Allen Deas and his wife. From this testimony there can be no doubt that the land covered by the mortgage sought to be foreclosed was the separate property of Mrs. Deas, and the real question in this case is, whether her separate property can be held liable for the payment of the debt secured by the mortgage to the plaintiff.

While there can be no doubt that Mrs. Deas executed the papers evidencing and securing the mortgage debt, yet that alone would not be sufficient to bind her separate estate; the plaintiff must go further and show that the contract was made with reference to her separate estate. This question of the liability of a married woman upon a contract, after the amendment of 1882, and before the act of 1887 was passed, has been so often before this court recently that it cannot be necessary now to go into any discussion of the law upon the subject. It will be sufficient to quote from one of the most recent cases, what must now be regarded as the settled law upon the subject. In *Hibernia Savings Institution* v. *Luhn* (34 S. C., 184), after citing numerous cases, it is said: "It must be regarded as settled that where a married woman, either directly or through her agent, borrows money from another, the money so borrowed becomes at once a part of her separate estate, and her contract to repay the same is a contract with reference to her separate estate, which may be enforced against her; and that the lender, in the absence of notice to the contrary, has a right to assume that the money was borrowed for the use of the married woman, and she is estopped from denying that fact, unless it is shown that the lender had notice to the contrary."

As in the case just quoted from, it seems to us that in view of this well settled law, the material inquiries in this case are: 1st. Whether the money secured by the mortgage to plaintiff was borrowed for the use of Mrs. Deas. 2nd. If not, whether the plaintiff, at the time of the loan, had any notice that it was borrowed for the use of her husband. While it is true that the testimony shows that though the written application for the loan was signed "Mary R. Deas," yet in fact her name was not signed by her in person, but was signed by her husband without her previous knowledge or direct authority, yet

it is equally manifest that the husband supposed that he had his wife's authority to sign her name, for he says, "I signed Mrs. Deas's application for the loan myself. In matters of importance she signed for herself; not considering that of sufficient importance, I signed for her. When I brought the papers for her signature, she first knew of the loan, but I had explained a short time before I brought her the papers about the loan." And Mrs. Deas in her testimony says, "When my husband brought the notes and mortgage for me to sign, I knew it was to borrow money from the Scotch Loan Company at the time I signed the notes and mortgage." And again she says, "Mr. Deas always managed my business in this county since I was married. I gave no written or verbal consent."

It is clear, therefore, that although Mrs. Deas may not have previously given her husband any express authority to sign her name to the application for the loan, that he had her implied authority to manage all of her business, and after he had signed her name to the writtern application for the loan, she expressly ratified and confirmed his act by executing in her own person the papers required in pursuance of the application for the loan. Any other view would, it seems to us, convict Allen Deas of attempting a fraud upon his wife, as well as upon the plaintiff, by forging her name to the application for the loan—a view which certainly cannot be accepted, If, therefore, Mrs. Deas must be regarded as having subsequently ratified the previously unauthorized act of her husband in signing her name to the application for the loan, it is the same as if she had expressly authorized the signing of her name, and she is bound by the statements contained in such application. From these statements the plaintiff was fully justified in supposing that the money was borrowed by Mrs. Deas for her own use, for she is expressly named as the borrower, and that the money was borrowed for her own use, as the statement is that the money was to be used, in part at least, to remove an encumbrance from her land.

It seems to us clear that Allen Deas must be regarded as the agent of his wife in negotiating this loan from the plaintiff; for although they both testify that the husband was never appointed agent of his wife, yet from all the testimony, it is very obvious

that what they really meant was, as Mrs. Deas says, that she never "verbally or in writing" constituted Allen Deas her agent to negotiate this loan—that is, that he had never in express terms been appointed her agent.    Yet as it is undoubtedly true that agency may be, and often is, established by circumstances as well as by direct and express evidence, we think it cannot be doubted from all the circumstances that Allen Deas was not only the general agent of his wife in transacting all of her business, but his agency in this particular transaction was expressly recognized by her when she executed the notes and mortgage and gave them to her husband to be delivered to the plaintiff.    In this respect this case is very similar to that of the *Hibernia Savings Institution* v. *Luhn* (34 S. C., 176, *supra*), which had not been published when the Circuit Judge rendered his decree in this case.

It is contended, however, by respondents that even if this be so, yet as plaintiff, through its agent, had notice that the money was borrowed for the purpose of paying the mortgage debt to Carrison, which it is claimed was a debt of the husband and not of the wife, the separate estate of the wife cannot be held liable under the rule laid down above.    This renders it necessary to inquire whether the Carrison debt was a debt of the husband, and so known to the plaintiff or its agent.    It seems to us that the testimony unmistakably shows the contrary.    In the first place, the representation made in the application for the loan, which, as we have seen, must be regarded as a representation of the wife, was that the money was borrowed, in part at least, for the purpose of removing an encumbrance on her separate estate, which the testimony shows was the Carrison mortgage, and the terms of that mortgage, together with the testimony of both husband and wife, show beyond all dispute that the Carrison debt was the debt of the wife and not of the husband, being contracted for supplies furnished to and used upon her plantation—not rented by the husband from the wife, but managed by him for the benefit of the family.

Mrs. Deas says: "Mr. Deas always managed my business in this county since I was married.    I gave no written or verbal consent.    I consented as a wife consents to her husband taking charge of her property.    I knew that Mr. Deas was insolvent

and owned no property. Had no verbal or written lease from
Mr. Deas of the land; he managed the business for me." Allen
Deas says, "I was insolvent at the time I was married, December
19, 1878. I have lived upon this land with my family since that
time. I have managed the property for my wife and attended all
business matters for her; never leased the place from her." Now
if, as this testimony shows, Allen Deas never rented this land
from his wife, but, on the contrary, managed it for her, it would
seem that the supplies furnished by Carrison to "run the place,"
would constitute a debt of the wife contracted as to her separate
estate, through her manager or agent, her husband, for which
she would be liable; and money borrowed by her to pay such
debt, to remove the encumbrance upon her separate estate, would
constitute a debt for which she would be liable. *Wallace* v. *Carter*, 32 S. C., 314; *Chambers* v. *Bookman, Ibid.*, 455.

Under the view which we have taken of the case, the constitutional question presented by the seventh ground of appeal does
not necessarily arise, and need not therefore be considered.

4    While this court undoubtedly has the power to declare an
act of the legislature unconstitutional, and for that reason
void, yet the exercise of such a power is a delicate matter, and
it should not be done unnecessarily; especially where, as in this
case, the court was not full when the question was presented.

It seems to us that the Circuit Judge, in view of the facts and
the law applicable thereto, erred in holding that the contract here
sought to be enforced was not such a contract as a married woman was capable of making, and for that reason adjudging that
the complaint be dismissed.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the case be remanded to that court
for the purpose of carrying out the views herein announced.