1425

Margie LINCOLN, Individually and as guardian of Tonia M. Lincoln and Roosevelt E. Lincoln, Respondent v. AETNA CASUALTY & SURETY COMPANY, Appellant.

(386 S. E. (2d) 801)

Court of Appeals

*W. Andrew Gowder, Jr.,* of *Wise & Cole,* Charleston, *for appellant.*

*Susan Sweat,* of *Altman & Sturgis,* Charleston, *for respondent.*

Heard Nov. 6, 1989.

Decided Dec. 4, 1989.

GARDNER, Judge:

Margie Lincoln (Lincoln), as general guardian for her two minor children, sued Aetna to recover money due under an agreement for payment of those sums due the children as workers' compensation benefits resulting from the death of their father. Both parties moved for summary judgment. The appealed order awarded summary judgment to Lincoln. We affirm.

## ISSUE
The only issue of merit is whether the trial judge erred in holding as a matter of law that no agency relationship existed by virtue of Lincoln's alleged ratification of the activities of the Colleton County Probate Court.

## FACTS
Margie Lincoln (Lincoln) is the mother of two children. She is described by her attorney as lacking a formal education. Her husband was killed by an industrial accident in 1979. A workers' compensation award was made to her and to her two children.

On May 22, 1980, Lincoln was appointed general guardian of the children by order of the then Judge of Probate for Colleton County, Marguerite S. Kinard (Judge Kinard) whose Clerk of Court was Janeal S. Steltzer.

Judge Kinard directed Edgar Bethea, Aetna's claims adjuster, to mail the children's compensation checks, which were made payable to Lincoln as general guardian, to the Judge of Probate's office. This was never put in writing.

Lincoln opened a savings account for the two children at

the First Federal Savings and Loan Association of South Walterboro. On September 22, 1980, Lincoln signed a joint control agreement with the Savings and Loan Association whereby she agreed Judge Kinard would have joint control of withdrawals made from the account.

The record reflects that Lincoln initially went by the Judge of Probate's office to endorse the checks but was told that it was not necessary for her to continue to endorse the checks. She testified that she did not authorize the Judge of Probate to deposit the checks to the account without her signature. She then testified "[T]hey just told me I didn't have to come back and sign it to put it in the bank. So I trust them because the money was going." Lincoln signed no agreement authorizing either endorsement or direct deposit of the checks by the Judge of Probate. She testified that she thought the money was being held for her children. She further testified that she had no other choice than to let the Judge of Probate deposit the funds if she wanted to have the money for her children.

I. A. Smoak, III, was elected Judge of Probate in 1982. Upon his election he discovered that Steltzer had fraudulently endorsed and cashed a number of trust account checks, including many of those made payable to Lincoln as general guardian for her children. A SLED investigation followed and Steltzer, arrested for embezzlement, pled guilty to a lesser charge. Subsequently, Lincoln discovered that Steltzer had forged and embezzled approximately $17,000.00 of the checks made payable to Lincoln as general guardian for her children. When alerted, Lincoln employed an attorney and recovered approximately $8,900.00 from the Savings and Loan and those funds recovered by Aetna from the bank which had cashed the checks. There remained a balance due Lincoln of $8,048.64 representing checks issued from July 2, 1981, through November 17, 1983.

Judge Smoak, in his affidavit of record, stated the only instrument signed by Lincoln which was of record in the Judge of Probate's office was the joint control agreement with reference to the savings account in the Savings and Loan Association.

After full argument, briefing and the filing of the deposition of Lincoln and other affidavits, both parties moved for

summary judgment. By order of July 25, 1988, the trial judge granted summary judgment to Lincoln in the amount of $10,594.38, which included prejudgment interest from August 4, 1986, the date that Lincoln, through her attorney, made demand for payment.

## DISCUSSION

The trial judge held in the appealed order that the Judge of Probate was not an agent of Lincoln because Lincoln had no right to control the acts of the Judge of Probate. This is good law. *See Fernander v. Thigpen*, 278 S. C. 140, 293 S. E. (2d) 424 (1982). We affirm this ruling; however, the relationship of agency need not depend upon the express appointment of the agent but may be implied from the words and conduct and circumstances of the case. *Moore v. Hardaway Contracting Co.*, 193 S. C. 299, 8 S. E. (2d) 511 (1940).

There is no dispute as to the facts; however, Aetna argues that from the admitted facts the trial judge should have concluded that Lincoln's conduct amounted to a ratification of the Probate Court's agency. We reject this contention.

Ratification, as it relates to the law of agency, means the express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another who at the time assumed to act as his agent. *Barber v. Carolina Auto Sales*, 236 S. C. 594, 115 S. E. (2d) 291 (1960). Ratification exists upon the concurrence of three elements; (1) acceptance by the principal of the benefits of the agent's acts, (2) full knowledge of the facts, and (3) circumstances or an affirmative election indicating an intention to adopt the unauthorized arrangements. *See* 2A C. J. S. *Agency* Section 71 (1972).

We hold under the facts of this case that Lincoln had no knowledge of the embezzlement of the funds which were supposed to be deposited to her account as guardian for her children in the Savings and Loan Association until after the investigation by Judge Smoak and that thereafter she promptly took action to recover the embez-

zled funds.[1] The Supreme Court of this state recognizes the principle that while generally the knowledge of an agent acquired in the course of his agency is chargeable to his principal, this rule does not apply when knowledge was obtained by the agent while engaged in the perpetration of a fraud on his principal. *Brown v. Bailey*, 215 S. C. 175, 54 S. E. (2d) 769 (1949). This rule is consonant with the law of the land to the effect that an agent's act, which is a fraud on his principal or which is illegal, cannot be ratified. *See* 2A C. J. S. *Agency* Section 68 (1972).

Moreover, there is no evidence of record indicating Lincoln either expressly or impliedly adopted the embezzlement of her children's funds as her own act.

For the reasons above stated, the contention that Lincoln ratified the embezzlement of the funds is rejected; the appealed order is therefore affirmed.

Affirmed.

SANDERS, C. J., and GOOLSBY, J., concur.

---

[1] In the absence of circumstances putting a reasonably prudent man on inquiry, ratification of an agent's act cannot be implied against the principal, in this case Lincoln, who was ignorant of the facts. *Moore v. Hardaway Contracting Co., supra.*