**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Certus Bank, N.A., Appellant,

v.

Kenneth E. Bennett, Twin Rivers Resort, LLC, and Bennett of Greenwood, LLC, Defendants,

Of Which Twin Rivers Resorts, LLC, is the Respondent.

Appellate Case No. 2014-001248

---

Appeal From Laurens County
Charles B. Simmons, Jr., Special Referee

---

Unpublished Opinion No. 2016-UP-090
Heard December 10, 2015 – Filed February 24, 2016

---

**REVERSED**

---

Louis H. Lang, Callison Tighe & Robinson, LLC, of Columbia, for Appellant.

T. S. Stern, Jr., Covington, Patrick, Hagins, Stern & Lewis, LLC, and Violet Elizabeth Wright, V. Elizabeth Wright Law Firm LLC, both of Greenville, for Respondent.

---

**PER CURIAM:** Certus Bank, N.A. sued Kenneth Bennett, Twin Rivers Resort, LLC, and Bennett of Greenwood, LLC, seeking to establish the validity of its mortgage on a property on Lake Greenwood. Certus brought claims for reformation, an equitable lien, and ratification. Twin Rivers Resort, LLC moved for summary judgment, and the special referee granted partial summary judgment on the ratification cause of action. Certus argues the special referee erred in granting summary judgment to Twin Rivers on Certus's ratification cause of action. We reverse summary judgment and remand the case for the parties to further develop the facts.

## I.    Facts

In 2006, JKR, LLC bought Twin Rivers Landing and Resort, a property on Lake Greenwood that included cabins, a dock, a bar, and a restaurant. CommunitySouth Bank loaned JKR $520,000 to purchase the Twin Rivers property and took a purchase money mortgage. JKR's members were Kenneth—or Ken—Bennett, Richard K. Bennett, and James Hendershot. JKR hired Ken Bennett's brother, Richard C.—or Rick—Bennett, to manage the property.[1]  Pursuant to an agreement with JKR, Rick Bennett acquired a twenty-five percent equity interest in the Twin Rivers property over the course of several years.

In July 2007, Ken Bennett entered into a Purchase Agreement to buy the Twin Rivers property from JKR. On November 1, 2007, Ken borrowed $497,450 from CommunitySouth. Ken signed a note and a mortgage on the Twin Rivers property in his own name.[2]  In a deposition, Ken stated that he did not know the mortgage on the Twin Rivers property was included in his loan from CommunitySouth. The closing attorney, James Belk, signed an affidavit stating,

> it was my intent as closing attorney, the intent of Kenneth
> Bennett, and the intent of [CommunitySouth] for
> [CommunitySouth] to obtain a first lien on the property
> described in the attached mortgage . . . and it was the
> intent of JKR Development, LLC, of which Kenneth

---

[1] Prior to JKR purchasing the property, Rick Bennett came to look at the Twin Rivers property for JKR because he had experience in owning or working in similar settings.

[2] In October 2007, CommunitySouth ordered an appraisal on the Twin Rivers property. The appraisal showed JKR still owned the property.

> Bennett was a member, as the title holder to the property, to give [CommunitySouth] that first lien.

Ken Bennett used part of the loan to pay off the purchase money mortgage and complete the purchase of the property.

In February 2008, Bennett of Greenwood, LLC bought the property from JKR. Ken Bennett signed the affidavit attached to the deed as "manager" of JKR. Bennett of Greenwood's sole member was Ken Bennett.[3] In the affidavit attached to the deed, Ken Bennett—as manager of JKR—stated there were liens or encumbrances on the land amounting to $1.3 million. Rick Bennett continued to manage the property and retained a twenty-five percent equity interest in the property. From 2007 to 2010, Ken Bennett modified and extended the maturity date of the note three times, provided CommunitySouth documents listing CommunitySouth as mortgagee on the property, and paid for title insurance for CommunitySouth on the property. During that time, Rick Bennett wrote several letters to Ken Bennett asking for information on the mortgage for the Twin Rivers property.

In March 2010, Rick Bennett told CommunitySouth he would assume the mortgage on the property if they could come to an agreement, and he received a loan commitment to refinance the November 2007 loan. The lender who worked with the Bennetts during this negotiation stated in an affidavit he negotiated with Ken and Rick to restructure or refinance the loan and "all parties operated under and acknowledged the belief that [CommunitySouth] already had a mortgage on the property." Ken signed the loan commitment as owner of the property, but Rick never signed the commitment. From March 2010 forward, Rick wrote several checks to CommunitySouth for the interest on the November 2007 loan.

In September 2010, Bennett of Greenwood transferred title to the Twin Rivers property to Twin Rivers Resort, LLC for one dollar. Twin Rivers Resort, LLC's sole member is Rick Bennett.[4]

---

[3] However, in a deposition, Rick Bennett stated he and Ken formed Bennett of Greenwood.

[4] Ken and Rick Bennett claim one dollar does not accurately reflect the sale price because Ken Bennett owed money to Rick Bennett.

In October 2010, Ken Bennett defaulted on the November 2007 loan.  In January 2011, the FDIC shut down CommunitySouth, and Certus Bank bought its assets, including the November 2007 mortgage.

Certus Bank brought an action to enforce the mortgage against Twin Rivers based on equitable lien, reformation, and ratification.  Twin Rivers moved for summary judgment on all three claims, and the special referee granted partial summary judgment on the ratification cause of action.  The special referee found it was undisputed that Ken Bennett "was not the record owner of the mortgaged property at the time Bennett executed the note and mortgage" and the doctrine of ratification did not apply because the "defect in the original mortgage is more than a 'technical' defect."

## II.    Standard of Review

"An appellate court reviews the granting of summary judgment under the same standard applied by the trial court under Rule 56, SCRCP." *Wachovia Bank, N.A. v. Coffey*, 404 S.C. 421, 425, 746 S.E.2d 35, 37 (2013).  Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  404 S.C. at 421, 746 S.E.2d at 38.  Summary judgment is not appropriate when "further inquiry into the facts is desirable to clarify the application of the law." *Carolina Chloride, Inc. v. S.C. Dep't of Transp.*, 391 S.C. 429, 434, 706 S.E.2d 501, 504 (2011).  In determining whether summary judgment is appropriate, the court must view all evidence in the "light most favorable to the non-moving party." *Wachovia Bank*, 404 S.C. at 425, 746 S.E.2d at 38.

## III.    Ratification

Members of a member-managed LLC and managers of a manager-managed LLC are agents[5] of the LLC.  S.C. Code Ann. § 33-44-301 (2006).  An agent of an LLC has the apparent authority to bind the LLC in matters within the ordinary course of business. *Id*.  However, acts beyond the ordinary course of business "bind the company only where supported by actual authority created before the act or ratified after the act."  § 33-44-301 cmt.  "[T]he sale, lease, exchange, or other disposal of all, or substantially all, of the company's property" is outside the ordinary course of

---

[5] Black's Law Dictionary defines an agent as "someone who is authorized to act for or in place of another; a representative." *Agent*, Black's Law Dictionary (10th ed. 2014).

business and requires actual authority or ratification.  S.C. Code Ann. § 33-44-404(c)(12) (2006).

"Ratification, as it relates to the law of agency, means the express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another who at the time assumed to act as his agent."  *Lincoln v. Aetna Cas. & Sur. Co.*, 300 S.C. 188, 191, 386 S.E.2d 801, 803 (Ct. App. 1989).  "Ratification proceeds upon the assumption that there has been no prior authority."  2A C.J.S. *Agency* § 52 (2013).  "However, once a ratification has occurred, it is equivalent to original, prior, or previous authority."  *Id.*  In *Lincoln*, this court first stated the three elements of ratification, "(1) acceptance by the principal of the benefits of the agent's acts, (2) full knowledge of the facts, and (3) circumstances or an affirmative election indicating an intention to adopt the unauthorized arrangements."  300 S.C. at 191, 386 S.E.2d at 803; *see Stiltner v. USAA Cas. Ins. Co.*, 395 S.C. 183, 191, 717 S.E.2d 74, 78 (Ct. App. 2011).  To ratify the mortgage in this case, Ken Bennett must have been an agent of the owner of the Twin Rivers property and the owner must have (1) accepted the benefits of the November 2007 transaction, (2) had full knowledge of the transaction, and (3) adopted or intended to adopt the transaction.

Certus argues the record contains evidence of ratification and the law of ratification is much broader than the special referee concluded.  We agree.  We hold summary judgment was not appropriate because (1) ratification is not limited to technical defects, (2) "further inquiry into the facts is desirable to clarify the application of the law," and (3) the record contains evidence both JKR and Bennett of Greenwood ratified the November 2007 transaction.  *Carolina Chloride*, 391 S.C. at 434, 706 S.E.2d at 504.

### A.    Ratification is Not Limited to Technical Defects

In its order, the special referee found the doctrine of ratification was not applicable because the defect in the November 2007 mortgage was more than a "technical" defect, citing *Scottish-American Mortgage Co. v. Deas*, 35 S.C. 42, 14 S.E. 486 (1892).  However, nothing in *Scottish-American Mortgage Co.* limits the doctrine of ratification to technical defects.  *See* 35 S.C. at 51-52, 14 S.E. at 487-88 (holding a wife had ratified the actions of her husband when the husband was an agent of the wife, he signed a mortgage on the wife's property in the wife's name, the mortgage was intended to bind the wife's property, and the wife expressly adopted the mortgage).  Additionally, no case law or secondary source limits ratification to technical defects.  *See, e.g.*, Restatement (Third) of Agency § 4.01

(Am. Law Inst. 2006) ("(1) Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority. (2) A person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents."); 23 S.C. Juris. *Agency* § 86 (1994) ("Ratification, as it relates to the law of agency, may be defined as the express or implied adoption and confirmation by one person of an act or contract performed or entered into on his behalf by another who at the time assumed to act as his agent. Ratification is the adoption by one person of an act done or bargain made for him by another under such circumstances that he would not have been bound but for his subsequent assent.").

### B. Further Inquiry is Desirable to Clarify the Application of the Law

Ratification of a commercial mortgage is a somewhat novel issue in South Carolina. Cases dealing with ratification of mortgages tend to deal with residential mortgages. *See Wachovia Bank*, 404 S.C. 421, 746 S.E.2d 35; *Scottish-American Mortg.*, 35 S.C. 42, 14 S.E. 486. Though, "[t]he mere fact that a case involves a novel issue does not render summary judgment inappropriate," as discussed below, we hold further development of the facts would clarify the proper application of agency law and ratification. *Linog v. Yampolsky*, 376 S.C. 182, 184-86, 656 S.E.2d 355, 356-57 (2008) (affirming the trial court's grant of summary judgment for plaintiff's medical battery claim when courts had not "thoroughly" explored medical battery).

### C. The Facts Support Ratification for both JKR and Bennett of Greenwood

Certus argues JKR, Bennett of Greenwood, and Twin Rivers Resort all ratified the mortgage and even if all three companies did not ratify, JKR ratified the mortgage and its ratification encumbers subsequent conveyances of the property.[6] *See* 27

---

[6] Certus could possibly foreclose on the mortgage without ratification. If Ken Bennett signed the mortgage with the actual authority of JKR, his actions bound JKR, regardless of what name he used to sign the mortgage. *See* 23 S.C. Juris. *Agency* § 67 (1994) (indicating a principal can be bound by "a person contracting as an agent" when the "person makes the contract in his own name"). Thus, we believe ratification may not be necessary for Certus to foreclose on the mortgage. However, this court cannot address whether Certus can foreclose on the mortgage

S.C. Juris. *Mortgages* § 49 (1996) ("When mortgaged land is sold . . . the purchaser takes legal title to the property subject to the lien of the mortgage."). The evidence—viewed in the light most favorable to Certus—indicates JKR, Bennett of Greenwood, and Twin Rivers Resort all may have ratified the mortgage. However, the evidence most strongly indicates JKR and Bennett of Greenwood met the three elements of ratification. We hold (1) Ken Bennett was likely an agent of JKR and was an agent of Bennett of Greenwood, (2) facts in the record support ratification for JKR, and (3) facts in the record support ratification for Bennett of Greenwood.

First, Ken Bennett was likely an agent of JKR and was an agent Bennett of Greenwood. Ken Bennett was one of three members of JKR and was the sole member of Bennett of Greenwood. We cannot conclusively determine Ken Bennett was an agent of JKR because the record does not indicate whether JKR was a member-managed or a manager-managed LLC. *See* § 33-44-301 (stating in a member-managed LLC, each member is an agent of the LLC and in a manager-managed LLC, each manager is an agent of the LLC). If JKR was a member-managed LLC, Ken Bennett was an agent of JKR. *See* § 33-44-301(a). If JKR was a manager-managed LLC, Ken Bennett was only an agent of JKR if he was a manager of JKR. *See* § 33-44-301(b). If JKR was a manager-managed LLC, the facts indicate Ken Bennett was a manager—and thus agent—of JKR. When JKR sold the Twin Rivers property to Bennett of Greenwood, Ken Bennett signed the affidavit attached to the deed as "manager" of JKR. Thus, Ken Bennett was likely an agent of JKR. Separately, as the sole member of Bennett of Greenwood, Ken Bennett was the only person with authority to act on behalf of or to bind Bennett of Greenwood. *See* § 33-44-301; *Agent*, Black's Law Dictionary (10th ed. 2014). Thus, Ken Bennett was an agent of Bennett of Greenwood.

Second, facts in the record support ratification for JKR. Though more information is needed to clarify JKR's acts, facts in the record tend to support a finding Ken Bennett was an agent of JKR and JKR accepted the benefits of the November 2007 transaction, had full knowledge of the transaction, and adopted or intended to adopt the transaction. *See Stiltner*, 395 S.C. at 191, 717 S.E.2d at 78. As discussed above, Ken Bennett was likely an agent of JKR. JKR appears to have accepted the benefits of the November 2007 transaction. Ken Bennett used part of the money from the note to pay off the purchase money mortgage and for Bennett

without ratification. The sole question before this court is whether the special referee erred in granting Twin Rivers summary judgment on Certus's ratification cause of action.

of Greenwood to purchase the Twin Rivers Property from JKR. *See Scottish-American Mortg.*, 35 S.C. at 51-52, 14 S.E. at 488 (finding ratification was appropriate when money from a note "was to be used, in part at least, to remove an encumbrance from" the mortgaged land). The record does not indicate whether JKR had full knowledge of the November 2007 transaction. Here, further inquiry into the corporate structure of JKR, the other members of JKR, and the information known to JKR about Ken Bennett's actions would be helpful to clarify the application of the doctrine of ratification. *Carolina Chloride*, 391 S.C. at 434, 706 S.E.2d at 504. However, facts in the record indicate JKR adopted or intended to adopt the November 2007 transaction. The closing attorney for the November 2007 note and mortgage stated it was the intent of Ken Bennet and JKR to mortgage the Twin Rivers property. Viewing all evidence in the light most favorable to Certus, JKR may have ratified the November 2007 transaction and the facts preclude summary judgment. *Wachovia Bank*, 404 S.C. at 425, 746 S.E.2d at 37-38.

Third, facts in the record support ratification for Bennett of Greenwood. Ken Bennett was an agent of Bennett of Greenwood. Additionally, Bennett of Greenwood appears to have accepted the benefits of the November 2007 transaction, had full knowledge of the transaction, and adopted or intended to adopt the transaction. Bennett of Greenwood accepted the benefits of the November 2007 transaction because the proceeds from the November 2007 note allowed Bennett of Greenwood to purchase the Twin Rivers property. Bennett of Greenwood had full knowledge of the transaction because Ken Bennett was the sole member of Bennett of Greenwood and Ken Bennett executed the transaction. Finally, facts in the record indicate Bennett of Greenwood intended to adopt the transaction. Though Bennett of Greenwood is now trying to avoid the mortgage, the mortgage is a consequence of the November 2007 transaction, and facts in the record indicate Bennett of Greenwood intended to adopt the transaction. *See Bank of Am., N.A. v. Draper*, 405 S.C. 214, 220, 746 S.E.2d 478, 481 (Ct. App. 2013) ("A mortgage and a note are separate securities for the same debt . . . ."). While Bennett of Greenwood owned the property, Ken Bennett listed CommunitySouth as the mortgagee on multiple title insurance documents. Additionally, during the time Bennett of Greenwood owned the Twin Rivers property, Ken Bennett modified or refinanced the note three times. The April 2009 modification stated the obligation on the note was secured by the November 2007 mortgage, and Ken Bennett signed the April 2010 extension as owner of the Twin Rivers property.

We hold summary judgment was not appropriate as to Certus's ratification cause of action. Facts in the record support JKR and Bennett of Greenwood's "adoption and

confirmation" of Ken Bennett's November 2007 transaction, which includes the mortgage on the Twin Rivers Property. *Lincoln*, 300 S.C. at 191, 386 S.E.2d at 803. Any purchaser of the Twin Rivers property would take the title subject to a ratified mortgage on the property. *See* Restatement (Third) Of Agency § 4.02 (Am. Law Inst. 2006) ("Ratification recasts . . . legal relations as they would have been had the agent acted within actual authority. Legal consequences thus 'relate back' to the time the agent acted."); 27 S.C. Juris. *Mortgages* § 50 (1996) ("The mortgagor may convey legal title to a purchaser, but the purchaser takes the title subject to any lien that the mortgage may have given the holder of the mortgage."). Thus, we remand the case for the special referee to determine whether JKR, Bennett of Greenwood, and/or Twin Rivers Resort ratified the November 2007 mortgage.

## IV. Conclusion

We **REVERSE** summary judgment on Certus's ratification cause of action and **REMAND** for further proceedings.

**FEW, C.J., and KONDUROS and LOCKEMY, JJ., concur.**