**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 22-2013**

_____

JILL K. JINKS, individually and as Trustee of the Jinks Heritage Trust,

>  Plaintiff – Appellant,

>  v.

SEA PINES RESORT LLC; COMMUNITY SERVICES ASSOCIATES INC.; ASSOCIATION OF SEA PINES PLANTATION PROPERTY OWNERS AND THE ADVISORY BOARD,

>  Defendants – Appellees.

_____

**No. 22-2056**

_____

JILL K. JINKS, individually and as Trustee of the Jinks Heritage Trust,

>  Plaintiff – Appellee,

>  v.

COMMUNITY SERVICES ASSOCIATES INC.,

>  Defendant – Appellant,

>  and

SEA PINES RESORT LLC; ASSOCIATION OF SEA PINES PLANTATION PROPERTY OWNERS AND THE ADVISORY BOARD,

>  Defendants.

_____

Appeals from the United States District Court for the District of South Carolina, at Beaufort.  David C. Norton, District Judge.  (9:21-cv-00138-DCN)

---

Argued:  January 24, 2024                                        Decided:  August 12, 2025

---

Before KING, WYNN, and RUSHING, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.  Judge Wynn wrote a separate opinion concurring in the judgment.

---

**ARGUED:**  Elizabeth Joy Campbell, WOMBLE BOND DICKINSON (US) LLP, Atlanta, Georgia; Ainsley Fisher Tillman, FORD WALLACE THOMSON LLC, Charleston, South Carolina, for Appellant/Cross-Appellee.  Robert Leon Widener, BURR & FORMAN LLP, Columbia, South Carolina, for Appellee/Cross-Appellant. John Phillips Linton, Jr., WALKER GRESSETTE & LINTON, LLC, Charleston, South Carolina; Mark Brandon Goddard, TURNER PADGET GRAHAM & LANEY, PA, Columbia, South Carolina, for Appellees.  **ON BRIEF:**  Ian S. Ford, FORD WALLACE THOMSON LLC, Charleston, South Carolina; Steven J. Flynn, LOCKE LORD LLP, Atlanta, Georgia, for Appellant/Cross-Appellee.  G. Trenholm Walker, WALKER GRESSETTE & LINTON, LLC, Charleston, South Carolina, for Appellee Sea Pines Resort, LLC.  R. Hawthorne Barrett, TURNER PADGET GRAHAM AND LANEY, P.A., Columbia, South Carolina, for Appellee Association of Sea Pines Plantation Property Owners, Inc. and the Advisory Board.  Benjamin E. Nicholson, V, BURR & FORMAN LLP, Columbia, South Carolina, for Appellee/Cross-Appellant Community Services Associates, Inc.

---

Unpublished opinions are not binding precedent in this circuit.

2

PER CURIAM:

Property owners in a community on Hilton Head Island in South Carolina voted to amend their governing documents. One owner, Jill Jinks, sought to invalidate the change, claiming the entity that called a referendum to amend the documents lacked the authority to do so. The district court granted summary judgment to the defendants, concluding that the property owners ratified the referendum even if it was procedurally flawed. We agree and affirm.

I.

The Sea Pines Plantation is a community on Hilton Head Island comprised of thousands of privately owned residences. It is also home to commercial properties and the Sea Pines Resort, which is owned and operated by Sea Pines Resort, LLC (the Resort). In 1974, the developer and then-owner of the community, Sea Pines Plantation Company, Inc. (the Company), executed the Declaration of Covenants and Restrictions at issue in this case (the 1974 Covenants). Along with other documents, the 1974 Covenants govern the rights and responsibilities of Sea Pines Plantation property owners.

The governing documents specify certain procedures for amendment. As relevant here, the 1974 Covenants may be amended by a referendum, and a "referendum may be called by the Company or shall be called upon the written petition of at least ten percent (10%) of the Participating Property Owners." J.A. 263. Once a referendum is called,

3

participating property owners (PPOs) vote on it.[1]  To pass, a referendum must receive 75% of the votes actually returned and the Company must approve it.

In 1986, the Company filed for bankruptcy.  Subsequently, the bankruptcy trustee executed a second set of covenants, the 1988 Covenants, which conveyed certain Sea Pines Plantation properties to a newly created nonprofit corporation, Community Services Associates, Inc. (CSA).  The 1988 Covenants tasked CSA with managing the conveyed community properties—which include roads, open spaces, lagoons, and ditches, among other properties—and administering fees for that purpose.  Every property owner in Sea Pines Plantation is a member of CSA.

In November 2020, CSA called a referendum to amend the 1974 Covenants.  Citing infrastructure inadequacies, CSA proposed a new annual assessment of $600 per family dwelling unit and $360 per residential lot to fund an infrastructure improvement fund. Shortly after, the Association of Sea Pines Plantation Property Owners, Inc. (ASPPPO), a nonprofit voluntary membership organization for Sea Pines Plantation residential property owners, held a special board meeting to discuss the referendum.  ASPPPO's bylaws state that it will further the interests of the PPOs and ensure compliance with Sea Pines Plantation's governing documents.  ASPPPO's board of directors adopted a resolution endorsing the proposed amendment, and ASPPPO subsequently encouraged its members

---

[1] PPOs are "all those owners of Residential lots, and Family Dwelling Units, except the Company, who execute . . . the 'Advisory Group Agreement', and all owners of Residential lots and Family Dwelling Units who purchase property in Sea Pines Plantation which is subject to the payment of the same or greater dollar amount of the assessments provided for herein."  J.A. 260.

4

to vote in favor of the referendum. They did so in an overwhelming fashion: of the 5,351 PPOs eligible to vote, 4,046 cast a vote, with 88% of voters approving the referendum.

After the referendum passed, Jinks sued CSA, ASPPPO, and the Resort in federal district court. In her view, the referendum was invalid because CSA lacked authority to call a referendum under the 1974 Covenants. She brought claims for breach of contract, declaratory relief, and a permanent injunction. The parties filed cross-motions for summary judgment, and the district court ruled for the defendants on all counts. The district court agreed with Jinks that CSA lacked authority to call the referendum but nevertheless concluded that the PPOs, who did have such authority, had ratified CSA's unauthorized action through their vote. Jinks appealed, and CSA cross-appealed.

## II.

"We review de novo a district court's decision to grant summary judgment, applying the same legal standards as the district court and viewing all facts and reasonable inferences in the light most favorable to the nonmoving party." *Ballengee v. CBS Broadcasting, Inc.*, 968 F.3d 344, 349 (4th Cir. 2020). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Pub. Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

III.

We begin by addressing the legitimacy of the referendum. As a threshold matter, the parties dispute whether CSA had authority to call the referendum in the first place. But we need not resolve that issue because we agree with the district court that the PPOs later ratified the call for amendment.[2]

Under South Carolina law, which applies here, ratification is the "express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another who at the time assumed to act as his agent." *Lincoln v. Aetna Cas. & Sur. Co.*, 386 S.E.2d 801, 803 (S.C. Ct. App. 1989). Three elements are essential to ratification: (1) acceptance by the principal of the benefits of the agent's acts, (2) full knowledge of the material facts, and (3) "circumstances or an affirmative election indicating an intention to adopt the unauthorized arrangements." *Id.*; *see Mortg. & Acceptance Corp. v. Stewart*, 140 S.E. 804, 805 (S.C. 1927); *Anthony v. Padmar, Inc.*, 465 S.E.2d 745, 754–755 (S.C. Ct. App. 1995).

On appeal, Jinks contests only the second element—whether the PPOs knew all the material facts when they voted to approve the amendment.[3] Jinks primarily argues that the

---

[2] We reject Jinks's contention that the district court improperly required her to disprove an affirmative defense at the summary judgment stage. The defendants moved for summary judgment on ratification, and the court accordingly focused on whether Jinks identified a dispute of material fact that would preclude summary judgment on that issue.

[3] As the district court noted, the parties "do not dispute that CSA may be considered the PPO's agent for ratification purposes." *Jinks v. Sea Pines Resort, LLC*, No. 9-21-cv-00138, 2022 WL 3691391, at *7 n.4 (D.S.C. Aug. 25, 2022). CSA acted as the PPOs'

6

PPOs could not ratify the referendum because they were unaware CSA lacked authority to call it. We agree with the district court that this information was not material for ratification. As an initial matter, "'[r]atification proceeds upon the assumption that there has been no prior authority.'" *Jinks v. Sea Pines Resort, LLC*, No. 9:21-cv-00138, 2022 WL 3691391, at *7 (D.S.C. Aug. 25, 2022) (quoting *Certus Bank, N.A. v. Bennett*, No. 2016-UP-090, 2016 WL 757501 at *3 (S.C. Ct. App. Feb. 24, 2016)). "'A fact is material to the choice of a principal to ratify an agent's unauthorized act if it concerns the existence and the extent of the obligations created by'" the unauthorized act. *Id.* at *8 (quoting 2A C.J.S. Agency § 61 (2013)). The proposed amendment notified the PPOs of the obligations created by the call for a referendum, namely the amount of the proposed annual assessment and its purpose to be used by CSA for infrastructure improvements in Sea Pines Plantation. We agree with the district court that a reasonable jury "could not find that knowledge that CSA's call was unauthorized had any bearing on a PPO's decision to adopt CSA's call of the Referendum as their own and retain the benefits and obligations of that call and the proposed amendment."[4] *Id.* at *9.

---

agent in calling the referendum that the PPOs were entitled to call themselves under the 1974 Covenants.

In her reply brief, Jinks argues for the first time that CSA's act of calling the referendum was an *ultra vires* act that could not be ratified. She has forfeited this argument by failing to raise it in her opening brief. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017). In any event, the act of calling the referendum was not *ultra vires* because the 1974 Covenants authorized the PPOs, the principal here, to do just that.

[4] Jinks asserted other allegedly material facts below and mentions a few in passing on appeal, including that the Resort declined to call the referendum itself and had requested indemnification if it were to do so. These facts are similarly immaterial to the PPOs'

Jinks suggests that CSA owed the PPOs a fiduciary obligation to fully disclose "all known information that is significant and material." *Anthony*, 465 S.E.2d at 752. But such a duty does not change our analysis. As explained, information about CSA's authority to call the referendum was immaterial to the PPOs' vote on the benefits and obligations imposed by the amendment. Jinks's challenge therefore fails.

## IV.

Next, we turn to Jinks's breach of contract claim against ASPPPO. In Jinks's view, ASPPPO had a duty under its bylaws to "'promote the common good and general welfare of [property] Owners,'" yet it endorsed a violation of the community's governing documents by encouraging the PPOs to vote in favor of CSA's unauthorized referendum. Opening Br. 43 (quoting J.A. 559); *see also* J.A. 559 (stating in its bylaws that ASPPPO will "[e]nsure compliance with all terms and conditions imposed by all . . . covenants . . . and other documents which affect properties within Sea Pines Plantation"). We agree with the district court that ASPPPO's decision is shielded from judicial second-guessing.

"In a dispute between the directors of a homeowners association and aggrieved homeowners, the conduct of the directors should be judged by the business judgment rule." *Fisher v. Shipyard Vill. Council of Co-Owners, Inc.*, 760 S.E.2d 121, 129–130 (S.C. Ct. App. 2014) (internal quotation marks omitted). "Under the business judgment rule, a court will not review the business judgment of a corporate governing board when it acts within its authority and it acts without corrupt motives and in good faith." *Dockside Ass'n Inc. v.*

---

decision to impose a new annual assessment on themselves for infrastructure improvements.

8

*Detyens*, 352 S.E.2d 714, 716 (S.C. Ct. App. 1987); *see Fisher*, 760 S.E.2d at 130 ("The business judgment rule only applies to *intra vires* acts, not *ultra vires* ones.").

Jinks contends the business judgment rule does not apply because ASPPPO acted beyond the scope of its authority by adopting a resolution endorsing the proposed amendment. Specifically, Jinks reasons that ASPPPO's approval was not required to pass the referendum and thus its endorsement was an *ultra vires* act. That is incorrect. As the district court observed, ASPPPO's endorsement of the referendum "that was designed to improve the infrastructure in the Sea Pines community" fits comfortably within its mandate to "promote the common good and welfare of the PPOs." *Jinks*, 2022 WL 3691391, at *12. Further, South Carolina law accords nonprofit corporations like ASPPPO power "to do all things necessary or convenient, not inconsistent with law, to further the activities and affairs of the corporation." S.C. Code § 33-31-302(18). Accordingly, ASPPPO acted within its authority by adopting the resolution supporting the proposed amendment, and the business judgment rule applies to its decision.

Jinks asserts in passing that ASPPPO did not act with appropriate business judgment because it did not seek an independent legal opinion on CSA's authority to call the referendum before endorsing it. She cites no authority to support such a requirement, nor does she contradict the district court's determination that she presented no evidence to dispute ASPPPO's evidence that, at the time of the resolution, it reasonably believed the referendum "had been called with the requisite authority." *Jinks*, 2022 WL 3691391, at

9

*12 & n.9.  We accordingly find no basis to disturb the district court's grant of summary judgment for ASPPPO.[5]

V.

Finally, Jinks argues the district court erred in dismissing her request for permanent injunctive relief against CSA, ASPPPO, and the Resort.  On appeal, she acknowledges that the district court rejected her claims for injunctive relief because of its summary judgment rulings in the defendants' favor on her substantive causes of action.  Jinks urges only that, if we vacate any of those rulings, we should also vacate the dismissal of injunctive relief.  Because we find no reversible error in the district court's summary judgment rulings, we affirm its judgment in full.

*AFFIRMED*

---

[5] Given our conclusion that ASPPPO exercised business judgment within the scope of its authority, we need not address the district court's independent conclusion that Jinks failed to prove damages arising from ASPPPO's alleged breach.  We further reject her passing remark that ASPPPO "breach[ed]" the covenants, given that it was not a party to those agreements.  Opening Br. 46.

WYNN, J., concurring in the judgment:

Although I would approach this matter differently in certain aspects, I agree with the Court's ultimate resolution and therefore concur only in the judgment rendered by the majority's opinion.

11